Pooler vs. The State.

POOLER, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 29 — December 10, 1897.*

*Criminal law: Burglary: Larceny: Statutory construction: Evidence: Constitutional law.*

1. The statute making punishable the breaking and entering of any building not adjoining to or occupied with a dwelling house, with intent to commit the crime of robbery, larceny, or other felony (sec. 4409, R. S.), covers and includes such a breaking and entering with intent to commit either grand or petit larceny. It is not necessary in a prosecution under it either to allege or to prove the value of the property intended to be stolen.

2. Any unlawful entry of a dwelling or other building with such intent is, by sec. 4411, R. S., to be deemed a breaking and entering.

3. The admission in evidence, upon the trial of one of three persons charged with the commission of a burglary, of the testimony given by the other two on their preliminary examinations for the same offense, as a whole, without pointing out any particular part as admissible, for the purpose of impeaching their testimony after they had been examined as witnesses for the defendant, *held* to be error and ground for the reversal of the judgment, because it deprived the defendant of his constitutional right to meet the witnesses face to face and to cross-examine them. CASSODAY, C. J., and MARSHALL, J., dissent in respect to the admission of such evidence and its effect.

ERROR to review a judgment of the municipal court for the eastern district of Waukesha county: D. S. TULLAR, Judge. *Reversed.*

The plaintiff in error was convicted in the municipal court for the eastern district of Waukesha county, under sec. 4409, S. & B. Ann. Stats., which provides, in substance, that "any person who shall break and enter any office, shop, warehouse or other building, not adjoining or occupied with any dwelling house, . . . with intent to commit the crime of robbery, larceny or other felony, shall be punished by imprisonment in the state prison not more than five years nor less than one year." The information charged

Pooler vs. The State.

that the plaintiff in error, in the night time, wilfully, feloniously, and burglariously broke and entered a certain building, used and known as a chicken house, the property of one George Marx,— said building not adjoining, or occupied with, any dwelling house,— with intent then and there to commit the crime of larceny, in this, to wit, the goods, chattels, and property of the said George Marx, then and there being found, to feloniously take, steal, and carry away, against, etc. The value of the chickens taken was not proved, and the court charged the jury that the taking of chickens, regardless of value, was larceny, within the meaning of the statute. The testimony, on the part of the defendant, on the trial, was that at about 12 o'clock at night, when the offense was committed, the door of the hen house was open. The testimony on the part of the state was that it was closed at 7 o'clock that evening. The court charged the jury that it made no difference whether the hen house was closed or open, if the entry was made with the intent to commit the crime of larceny; that this constituted the offense of burglary. The jury by which the plaintiff in error was tried was summoned from the portion of the county of Waukesha constituting said municipal district, and not from the entire county. There was no proof in the record that the property stolen was of the value of $20.

Part of sec. 8, ch. 22, Laws of 1895, the act establishing said court, provides that the clerk thereof "may examine on oath all persons applying for warrants and may reduce their examination to writing and file the same and may issue all warrants and process from said court." The salary of the judge is $1,500, to be paid, three fourths out of the county treasury of Waukesha county, and one fourth out of the village treasury of the village of Waukesha; and the clerk's salary is to be paid substantially in the same manner. It is provided that all costs imposed and collected in criminal cases under the laws of the state are to be paid

into the county treasury, and all costs imposed and collected in cases arising under the charter and ordinances of any city or village shall be paid into the treasury of the city or village under whose charter said case arose. Sec. 5 provides that applications for warrants may be made to the clerk of the court, and said clerk shall have power to issue the same, exercising the discretion a justice of the peace may exercise in granting or refusing the same. If the clerk refuse the warrant, the court, on application, may grant the same, in its discretion.

The evidence tends to show that Ernest Sweet and Charles Grimshaw were concerned with the plaintiff in error in the commission of the offense in question. These parties were severally arrested and brought before the court, had preliminary examinations, and each was subsequently tried for the offense in question. Upon the trial of the plaintiff in error, after he had rested his case the prosecution called W. A. Pierce, who was sworn on behalf of the state *in rebuttal*, and testified that he was a stenographer of the court, and took down the testimony, January 15th, given by Ernest Sweet in the case of the state of Wisconsin against said Sweet, and also the statements made by him. He testified that the document produced by him was a correct transcript of that testimony, and the whole thereof, whereupon the testimony of said Sweet on said preliminary examination was offered in evidence. This was objected to by the defendant as incompetent, irrelevant, and immaterial; but the objection was overruled, and the testimony received. Margaret Gaynor was also sworn on behalf of the state on rebuttal, and testified: " I am the regular stenographer of the county court. I was called into the municipal court as stenographer in the preliminary examination of the state of Wisconsin against Charles Grimshaw. I transcribed the same from shorthand into longhand. Think this is a correct transcript of the said testimony, and the whole thereof." The prelim-

Pooler vs. The State.

inary examination of Charles Grimshaw was then offered in evidence, and objected to as incompetent, irrelevant, and immaterial. The objection was overruled, and the testimony received. Both Sweet and Grimshaw were sworn and examined as witnesses on behalf of the defendant, *Pooler*, at his trial; and it is argued that their testimony on said preliminary examinations was produced on the trial of *Pooler* to impeach their testimony given on his behalf on such trial. The court refused to instruct the jury, as asked by the plaintiff in error, that "if the door of the hen house was standing open when the defendant first approached it, and they nor any of them had any agency in unfastening the same, then there was no breaking, within the meaning of the law, and you should acquit the defendants."

The cause was submitted for the plaintiff in error on the brief of *D. J. Hemlock,* and for the defendant in error on that of the *Attorney General.*

PINNEY, J. 1. The contention made by the plaintiff in error, that the law creating the municipal court for the eastern district of Waukesha county was unconstitutional and void, in that it did not provide for a jury to be summoned from the entire county, but only from said eastern district, and that, being a municipal court, its jurisdictional limits must be co-extensive with the boundaries of some municipality, and other like objections, as well as that the law attempts to confer judicial powers upon the clerk of the court, were considered in the case of *Shaffel v. State, ante,* p. 377, in respect to the validity of substantially the same legislation in regard to the municipal court for the western district of Waukesha county, and overruled. The determination of the court in that case disposes of the similar objections now urged by the plaintiff in error, and it is not necessary to give them further attention.

2. The court properly charged the jury that the stealing

of chickens, regardless of value, was larceny, within the meaning of sec. 4409, R. S. In *Hall v. State*, 48 Wis. 688, it was held that "in charging an offense under sec. 4410, R. S., where the intent of the breaking and entering was to commit a larceny, it was not necessary to allege the value of the goods which the accused intended to steal." In that case it was contended that the information was insufficient, for the reason that the statute did not cover petit larceny, but the court said: "We are unable to give the statute the construction contended for. The statute must be read as though, instead of the words 'or other felony,' it had been written, 'or any other offense for which the offender, on conviction, shall be liable, by law, to be punished by imprisonment in the state prison.' We think the term 'or other felony' is not a limitation on what precedes, but is inserted to extend the scope of the section to other offenses not specifically named therein. The intent which the statute makes essential to constitute an offense under it is, generally, an intent to commit the crime of larceny; and the stealing of one dollar is larceny, as completely as is the stealing of $1,000. Besides, in most cases where the accused has failed, for any cause, to accomplish his purpose, it would be impossible to prove the extent of the larceny which he intended to commit when he broke and entered the dwelling house. We do not believe it possible that the legislature ever intended to throw any such burden upon the state in the prosecution of offenses under this statute. If it did, larceny should be excepted from the statute; for, as a rule, no convictions could be had in such cases, however guilty the accused might be, unless his intention was consummated." *State v. Kane*, 63 Wis. 267. The same construction is manifestly applicable to R. S. sec. 4409, under which the defendant was prosecuted. As it was not necessary to allege the value of the property intended to be stolen, it is plain that no proof was required upon a matter not necessary to have been alleged.

The chicken house was a building, within the meaning of the statute. *Clark v. State*, 69 Wis. 203. "Any unlawful entry of a dwelling house or other building, with intent to commit a felony, shall be deemed a breaking and entering of such dwelling or other building, within the meaning of the last four sections" (R. S. secs. 4407–4410, inclusive). Sec. 4411. There was therefore no error in giving the instruction excepted to, on the subject of breaking and entering the chicken house, or in refusing the instruction asked by the defendant's counsel.

3. We think that it was error to admit in evidence the testimony given on the preliminary examinations of Ernest Sweet and Charles Grimshaw. It is contended that it was offered and admitted to impeach the testimony of Sweet and Grimshaw after they had been examined as witnesses for the defendant, but the record fails to show that the purpose for which it was offered and received was thus limited. These examinations were brought forward by the testimony of the two stenographers, W. A. Pierce and Margaret Gaynor, and offered in rebuttal. Sweet stated in his testimony, on his examination, and in his preliminary statement: That Grimshaw was one of the three persons that went to the chicken house. That "there were three of us. We came to this place, went in there, and killed eleven or twelve chickens, and put them in a bag. We were going out. Grimshaw and I was in the coop. Saw somebody down near the road. We jumped over the fence, started to run, dropped the bag. Did not know the third man, but the three left Waukesha together. Had seen him three or four times." The testimony of Sweet on defendant's trial, in connection with his testimony on the preliminary examination, tended strongly to show that the defendant, *Pooler*, was one of the party. Grimshaw made a preliminary statement upon his examination, saying: "I plead guilty to what I have done, but there were three of us,— *Orrin Pooler*, Ernest Sweet, and myself." Being sworn upon such examination, he said: "They got

there about half past 10 o'clock, and all left the house to-
gether.   That he and Sweet went in the chicken house, and
*Pooler* stood on the outside, with a stone in his hand, to
keep guard, I suppose.   He told us some one was coming,
and we ran away and left.   The harness and a little bay
horse we had belonged to *Pooler*, and the big horse to Sweet,
and the buckboard to Casebeer and me."   That they got
about eleven or twelve chickens.   "*Pooler* ran towards the
team, I guess.   We were all in the scheme together.   Sweet
went in first, he [Grimshaw] after, and the other fellow did
not go in at all."

The evidence thus brought into the case in rebuttal, as
the record shows, was strongly inculpatory of the defend-
ant, *Pooler*, and tended directly to show that he was guilty
of the offense with which he is charged.   The parties who
had given the evidence offered were still living.   It does not
appear that *Pooler*, the accused, was present at either of the
examinations, or when this testimony was given, or that he
had any opportunity to cross-examine either Sweet or Grim-
shaw.   It may be conceded that some of the evidence thus
offered and received might be, or was, competent to im-
peach the testimony of Grimshaw and Sweet as witnesses
for the accused, but it was all put in without discrimination,
and without pointing out any particular part of it as com-
petent or offered for that purpose.   The accused objected
to it as incompetent, irrelevant, and immaterial.   The time
for receiving evidence in chief in support of the charge had
passed.   It was received *in rebuttal*, and in violation of the
right secured to the accused by sec. 7, art. I, of the consti-
tution, to meet these witnesses face to face, and the impor-
tant right to cross-examine them.   The reception of such
evidence, in the manner stated, was error, and requires a re-
versal of the conviction.

*By the Court.*— The judgment of the municipal court for
the eastern district of Waukesha county is reversed, and the

cause is remanded to that court for a new trial; and it is ordered that the warden of the state prison, in whose custody the said *Orrin Pooler* now is, do deliver him into the custody of the sheriff of the county of Waukesha, who is required to keep him in his custody until discharged therefrom by law.

CASSODAY, C. J.    A considerable portion of the evidence, and the rulings of the court thereon, are not printed. I confess that I have not read the manuscript record. I am confident, however, as I expressed myself in consultation, that in so far as the verified stenographer's minutes were put in as mere impeaching evidence after the proper foundation had been laid, there was no error, and, in so far as they are substantially the same as the accused swore to himself upon the stand, the admission of them is not reversible error.

MARSHALL, J.    The only reason given for reversing the judgment is the ruling on the objection of defendant's counsel to the evidence given on the preliminary examinations of Sweet and Grimshaw. As my brethren appear to understand such evidence, I should concur in the decision rendered, but as I understand it, after a most careful study of the same, not even a shadow of prejudicial error, by reason of the admission of it, exists. True, it tended to show that the three persons, Grimshaw, Sweet, and the accused, were all concerned in the offense, but, before it was offered, the accused testified in his own behalf to the movements of the three on the night of the burglary, from the time they started out on the expedition up to and including the commencement of the offense, the same in all essential particulars as Grimshaw and Sweet testified before the justice, except some testimony that tended in an indefinite way to show that the accused went to the hen-coop door, or into the coop, while his testimony was only to the effect that he took care of the team

while his associates went in and got the chickens, and that
when the owner was about to appear on the scene, aroused
by the creaking of the hen-house door, the accused drove the
team up the road, left it there, jumped over the fence and
ran into the woods.

Sweet and Grimshaw testified on the trial, both agreeing,
that the subject of stealing the chickens was discussed before
any one got out of the wagon, and that finally all jumped
out, and, while they (Grimshaw and Sweet) went in after the
poultry, the defendant stood guard near the team with a
stone, or, as Grimshaw put it, "outside with a stone." Their
testimony did not differ in any essential particular from what
they testified to before the justice, except, as stated, there
was some not very distinct evidence on the former occasion
that the accused went to, or into, the hen house. But a fair
consideration of the whole evidence then given leaves on
the mind only the impression that the testimony of the three
at the trial, and the two at the preliminary examinations,
are all in substantial accord to the effect that "all were
in the scheme together," and that the two, Grimshaw and
Sweet, went into the coop and got the chickens, while *Pooler*
remained outside and took care of the team and gave the
alarm when it became necessary. True, "the testimony of
Sweet on the defendant's trial, in connection with his testi-
mony on the preliminary examination, tended strongly to
show that the accused was one of the party;" but it appears
to be overlooked, hence not stated in the opinion, that Sweet
was called as a witness for the accused, not by the state,
and that his testimony, in effect, went no further than to
corroborate the defendant. True, Grimshaw said on the pre-
liminary examination: "We were all in the scheme. We
left the house together. Grimshaw and I went in and took
the chickens, and *Pooler* stayed outside with a stone in his
hand to keep guard, and we were all in the scheme. Sweet
went in first, I afterwards, and the other feller did not

go in at all. The harness and little bay horse we had belonged to *Pooler*, and the big horse to Sweet, and the buckboard to Casebeer and me." But it appears to have been overlooked, hence not stated, that he testified the same when on the stand as a witness for defendant on the second occasion, and that it only corroborated defendant's own evidence. True, the evidence on the preliminary examination, standing alone, " would seem to be strongly inculpatory of *Pooler* and tend directly to show that he was guilty of the offense charged," but in view of the fact that it was practically all in the case before, not only from the same witnesses but from the defendant himself, it occurs to me that if the admission of the first evidence was error at all, it was harmless error.

As the dissent here recorded goes largely on differences as to the condition of the record, we will go a little more fully into it, giving the words of the witnesses. *Pooler* testified that after discussing the subject of committing the offense, while the team was in the road opposite the hen coop, " *We jumped out and they took a sack and went over and into the hen house. These are the men* [Sweet and Grimshaw] *I saw take the chickens. That is what they said. When they went into the coop, I could not say I saw the chickens stolen. When they went in they closed the door; it squeaked. I was about five rods from the coop. I drove the team up the road and left them and jumped over the fence and ran into the woods.*" Sweet, as a witness for the accused, agreed with him in every respect up to the time " *all jumped out of the wagon,*" and then said: " We [meaning Grimshaw and the witness] went over and took the chickens while *Pooler* stayed with the rig. He took care of the rig while we went in." Grimshaw, as a witness for the accused, agreed with his two associates as to the occurrences up to the time " all jumped out of the wagon," then said: " Sweet and I went in. We started to pull the door shut; it made a noise. *Pooler* stayed

by the haystack with the team. He did not leave the wagon.
He stood outside and kept guard. He stood near the wagon.
I supposed he was standing outside with a stone to keep
guard. I said on my preliminary examination he threw a
stone or came and told us." It will be observed that there
was no controversy but that the offense was committed and
that "all were in the scheme." If the trial court had in-
structed the jury that if they believed the *defendant's evi-
dence*, he was guilty, and that they should so find, it would
have been proper. Whether defendant did more than co-
operate by taking care of the team and standing guard, was
not material. The defense appears to have proceeded wholly
on the theory that, though the offense of larceny was com-
mitted, there was no breaking sufficient to constitute the
crime of burglary. There seems to have been great care
taken to bring out the fact that the door of the hen house
was open when defendant and his associates arrived. Each
testified to that, and it was practically the only serious at-
tempt at a defense. But as it was night time when the act
was perpetrated, it was immaterial whether the entry was
made by means of an actual breaking or not. The unlaw-
ful entry with intent to commit the offense was sufficient.

Now, without further quoting the evidence, suffice it to
say that in every particular, where that of Grimshaw and
Sweet differed on the first from that on the second occasion,
the proper foundation was laid to prove the former testi-
mony by way of impeachment. Differences existed which,
in the judgment of the prosecutor, rendered the offer of the
evidence objected to advisable; but such differences did not
affect the issues, as all agreed that defendant actually co-
operated with his associates from first to last.

But it is said that though some of the evidence was proper
as impeaching, the offer was not limited. If the trial court
had rejected the entire offer on that ground, it would have
been proper, as we shall hereafter show. But it was as

Pooler vs. The State.

much the duty of the objecting party to specify the objectionable evidence as of the person who offered it to specify what was competent. That is elementary. Either failed at his peril of not being able to avail himself of any exception afterwards. If a part was admissible, the admission of all against a general objection did not constitute error, as we will endeavor to show.

Again, as all of the evidence that was not admissible as impeaching agreed with what the witnesses had already testified to, the accused was not prejudiced. It is only for prejudicial errors that judgments can properly be reversed, and that, under our statute on the subject, applies to criminal as well as civil cases. R. S. sec. 2829; *Olson v. Solveson*, 71 Wis. 663; *Odette v. State*, 90 Wis. 258; *Jackson v. State*, 91 Wis. 253. It is rightly said by DIXON, C. J., in an early case, that "this is a beneficent statute, which cures a multitude of errors." We may add that it should always be recognized and applied to the end that justice be made certain and speedy, instead of being hindered, delayed, and made burdensome to parties by disturbing judgments for errors that prejudice no substantial right. That was its plain intent and purpose. It has been so applied by this court over and over again, and not too frequently. *Olson v. Solveson, supra; Best v. Sinz*, 73 Wis. 243; *Krueger v. Merrill*, 66 Wis. 28; *Neilon v. Marinette & M. Paper Co.* 75 Wis. 579; *Little v. Staples*, 98 Wis. ——.

It is said the defendant had the right to meet the witnesses face to face, and the admission of the evidence under discussion violated a constitutional right. But the witnesses were in court; they had been upon the stand. The stenographers were put upon the stand and testified to the general correctness of the testimony as taken down by them. The right of cross-examination of all such witnesses, face to face, existed to the fullest extent. Of course it was not improper to prove what a witness said on a former occasion, by way

of impeachment, merely because the person affected by the impeachment, indirectly, was not present at the time the impeaching statement was made. There was at most only the irregularity of reading the evidence after the stenographers had testified to the correctness of it, instead of having them testify to what was said, using their minutes to refresh their memories, and to read from if necessary. That the minutes could have been used by the stenographers of course cannot be doubted. *Rounds v. State*, 57 Wis. 45. The court there said that, while the stenographer who took the evidence could testify to what the witness said, from the minutes kept by him, it was improper to read them as evidence. That must be understood with reference to the facts of the case. The court was discussing an attempt to use such minutes as evidence without the testimony of the stenographer as to their correctness.

So the simple question is, Can it be said that the mere fact that the evidence testified to as correct by the stenographers who took it was read by some one other than the stenographers, was prejudicial error? It would seem that there could be but one reasonable answer to the question, and that the citation of authorities would be needless. In *Hair v. State*, 16 Neb. 601, it was said, in effect, that when it is proper to prove the evidence of a witness taken on another occasion, the person who took such evidence, after testifying to the correctness of his minutes, may read them to the jury. In *People v. Murphy*, 45 Cal. 137, it was said on the same subject, that after the stenographer has testified to the substantial correctness of his minutes, they may be read in evidence instead of having him testify to what the witness said, using the minutes to refresh his memory. And again, in *Cornell v. Green*, 10 Serg. & R. 14, it was said, in effect, that when the witness' evidence may properly be produced, it is sufficient to prove by the person who took such evidence that his minutes contain the evidence in substance;

if the substantial correctness of the minutes be verified, "there can be no sort of objection to their being read in evidence." To the same effect are *Yale v. Comstock*, 112 Mass. 267; *People v. Sligh*, 48 Mich. 54; *Philadelphia & R. R. Co. v. Spearen*, 47 Pa. St. 300.

We may safely venture that no well-considered case can be found contrary to the views above expressed, on the strength of a most thorough examination to find such, and failure so to do, and the failure of my brethren in the same field.

From the foregoing it must appear that all that part of the preliminary examination, for the introduction of which a proper foundation as impeaching evidence was laid, was properly admitted, and that the balance, if erroneously admitted at all, was harmless error. But if it were otherwise, there is a most perfect answer, in our judgment, to the assignment of error, in that the objection was general. If any material part of the evidence offered was competent for any purpose, the balance with which it was mixed was not reached by a general objection. It was discretionary on the part of the trial court to require the party offering the evidence to specify the particular part which was admissible, and offer that by itself, and, if he failed so to do, to reject the entire offer; or, the court might have compelled the objecting party to specify the particular part objectionable, and for failing so to do, by merely insisting on the general objection, admit the whole. Mr. Jones, in his valuable work on Evidence, says that "it is a familiar rule that a mere general objection to testimony as a whole does not avail when part of the testimony is admissible." See § 897, and a large number of cases to support the text. The same principle applies that governs in case of a general exception to findings, where some are proper, or a general exception to a charge including several propositions, where some are not subject to exception, or a general exception to a refusal to

give several requests, where some are properly refused. *Luedtke v. Jeffery*, 89 Wis. 136; *Green v. Hanson*, 89 Wis. 597; *Smith v. Coolbaugh*, 21 Wis. 427. Two very recent cases supporting the text cited from Jones, but not cited in the notes to such citation, are *Smalls v. State* (Ga.), 25 S. E. Rep. 614, and *Harris v. Amoskeag Lumber Co.* 97 Ga. 465. In the latter case the subject is very fully discussed.

In my opinion the judgment should be affirmed.