GRIMSHAW, Plaintiff in error, vs. THE STATE, Defendant in error.

SWEET, Plaintiff in error, vs. THE STATE, Defendant in error.

*February 14 — March 1, 1898.*

*Criminal law and practice: Issuance of warrant: Presumption of regularity: Evidence: Meeting witness face to face: Reporter's transcript: Erasures: Immaterial errors.*

1. A warrant, issued under the seal of a court having power to issue it, signed by the clerk, and tested in the name of the judge thereof, will be presumed to have been issued by the court or under its direction.

2. The reception in evidence, as against the plaintiff in error, of a statement or confession made in his absence by a codefendant when the latter was arrested and brought before the examining magistrate, cannot be held a prejudicial error, where the bill of exceptions, which is certified to contain all the evidence, does not contain such statement.

3. Where the statement or confession of a defendant, made before the examining magistrate, had been taken down in shorthand and afterwards transcribed by the reporter, the admission of such transcript in evidence at his trial was not erroneous because a trifling and immaterial erasure or change had been made therein, especially where such statement was fully corroborated by the testimony of the defendant at the trial.

WRITS OF ERROR to review judgments of the municipal court for the eastern district of Waukesha county: D. S. TULLAR, Judge. *Affirmed.*

*C. E. Armin,* for the plaintiffs in error.

For the defendant in error there was a brief by the *Attorney General,* and oral argument by *L. J. Billings.*

PINNEY, J. The plaintiffs in error were jointly charged by information with having feloniously, in the night time, on, etc., wilfully and burglariously broken and entered a certain building used and known as a chicken house, the property of one George Marx, said building not adjoining

or occupied with any dwelling house, with intent then and there to commit the crime of larceny, in this, to wit, the goods and chattels of the said George Marx then and there being found to take, steal, and carry away, against the peace and dignity of the state of *Wisconsin.* The defendants pleaded not guilty, and, having been convicted and sentenced, each brought his separate writ of error.

Upon the writ of error brought by *Grimshaw* it was assigned as error that the warrant upon which he was arrested was illegal and void, in that it was issued by E. S. Park, clerk of the municipal court for the eastern district of Waukesha county, upon a complaint made before him for that purpose; and it was contended that the said E. S. Park, as clerk of said court, had no judicial authority to take said complaint or issue said warrant thereon.

1. The warrant was under the seal of the court, and signed by the clerk, and tested in the name of the judge thereof. By sec. 8, ch. 22, Laws of 1895, establishing said court, it is provided that the clerk of the court "may examine on oath all persons applying for warrants, and reduce their examinations to writing and file the same, and may issue all warrants and other processes from said court." Sec. 4 of said chapter provides that "the general provisions of law which may at any time be in force relative to the circuit courts and actions and proceedings therein in case of crime . . . shall apply also to said municipal court, unless inapplicable, and the rules of practice prescribed by the justices of the supreme court for circuit courts shall be in force in said municipal court; and these rules, practice and proceedings shall conform as near as practicable to the rules of practice of circuit courts; and it has power and authority to issue all process necessary to carry this practice, which process shall in substance be the same, when applicable, as used in circuit courts." Similar objection was made in *Shaffel v. State,* 97 Wis. 377, in relation to the criminal warrant issued in

like manner by the municipal court for the western district of said county, and was overruled. It is not necessary to enter upon an examination or discussion of the powers of the clerk. It is enough that the court had power to issue the warrant. Upon its face it appears to have been so issued. If actually issued by the clerk, the presumption is that it was issued by direction of the court. There is nothing in *Pooler v. State,* 97 Wis. 627, that gives any support to this assignment of error. On the contrary, it was there treated as without merit, in view of the case of *Shaffel v. State, supra.*

2. It is assigned as error that the court erroneously received in evidence on the trial of *Grimshaw* the statement made before the municipal judge and the district attorney by *Ernest Sweet,* in the absence of the defendant, when he (*Sweet*) was arrested and brought before said judge for examination for the offense charged in the information. The objection is that the reception in evidence of such statement or confession was in violation of the right secured to him by sec. 7, art. I, of the constitution, to meet the witnesses against him face to face. This assignment of error wholly fails, for the reason that the bill of exceptions, which is certified to contain all the evidence given upon the trial, does not contain the statement or confession referred to. The court has no means, therefore, of judging whether its reception in evidence was error prejudicial to the defendant *Grimshaw.*

For these reasons the judgment against the defendant *Grimshaw* must be affirmed.

The defendant *Sweet* sued out his separate writ of error, and, upon the return to the writ, made and assigned as error the same objections to the validity of the complaint and warrant as were made in the case of *Grimshaw.* From what has been said, it will be seen that this point needs no special attention.

The second error assigned is that the court erred in receiving in evidence, upon the trial of said *Sweet*, the statements alleged to have been made before the municipal judge by *Grimshaw* and *Sweet* at the time of their arrest, as taken down in shorthand, and afterwards transcribed into longhand in the *Sweet* case by the reporter. Objection was made on the same ground as in the case of *Grimshaw*, and, further, that erasures or changes had been made in the transcript of the minutes written out by the reporter.

By the separate bill of exceptions returned to the writ of error taken by said *Sweet*, it appears that he made quite a lengthy statement before the municipal judge, at the time of his arrest, in which, after the warrant was read to him and on being asked if he wanted an examination, he responded: "No judge, I am guilty of it. I am willing to own it. We went in and killed twelve chickens," etc.; and gave the circumstances in detail, stating that *Grimshaw* was with him, and that there were three of them, but denied knowing who the other was, and insisted that he had not been induced by any promise of an officer to make said statement or confession. After the information had been filed the defendant pleaded guilty. Subsequently counsel appeared in his behalf, and the examination was held open, and he was allowed to plead not guilty.

At the trial it appeared that the alleged erasure or change made in the transcript of the minutes of the reporter was trifling and immaterial.

Upon the trial the defendant *Sweet* testified as a witness in his own behalf, and gave a detailed statement of the particulars of the offense charged in the information, in substance: That they arrived alongside of the chicken house,— himself, *Grimshaw*, and Pooler. That the door was open quite a way,— about three quarters open. That they left the horses with Pooler, and he turned them around and took them up the road, "and we went in and got two apiece,

and we came out, and I says, 'Well, we will get four apiece; that will be enough,— four for me and four for him.' I says, 'They will spoil on us;' and he says, 'No; we can eat them.' I put them in a bag,— ten or twelve in this bag.   While we were in there we didn't see anybody come out.  I saw some-body on the doorsteps, and I says, 'Leave the chickens there,' and I left the chickens there, and went up the road. The team was up there and Pooler, and we came back and got the chickens again.   Then we thought we would leave· them there, and wouldn't take them, and we walked down towards the road.   We didn't know whether we dared drive past the house or not, and, if there wasn't anybody out there,. we was going to drive by the house, and go to Waukesha this way.   When we got down there, there was a couple of men there with a lantern, and we started to run up towards the team.   They followed me up there.   I came down the railroad track, and came to town.   I was arrested at Dar-ien."   That when the paper was read to him in court he thought it was for stealing the chickens,— petit larceny,— and it was that he said he was guilty of.   That he remem-bered he objected when the word breaking was used.   "I said I didn't want to plead guilty to that, because there was no breaking done.   I said something there about this third man,— that I didn't know him.   It was because he was a married man, and I didn't have no place just then to stop,— nothing to look after,— so I thought I would plead guilty to it, and leave him out of it."   He described the situation and location of the barn and chicken house with reference to the road.   In brief, his testimony on the trial, taken in connec-tion with his statement before the municipal judge upon his arrest, which extended over several pages, showed clearly, and beyond any dispute, his guilt of the offense charged against him and of which he was convicted by the jury.  His. present counsel attended the trial and participated in his examination as a witness, which fully corroborated his con-

fession of guilt before the examining magistrate. The statement made by *Grimshaw* before the municipal judge on his preliminary examination was received in evidence at the trial only as against the defendant *Grimshaw*, and not as against said defendant *Sweet*, as his bill of exceptions clearly shows. In view of these facts, it is impossible to say that any material error intervened to the prejudice of the defendant *Sweet*. The ·presumption of innocence that ordinarily obtains in the case of a person charged with crime was clearly and entirely overcome by his confession before the municipal judge, and sustained and fully corroborated by his testimony thus given as a witness upon his trial in his own behalf. For these reasons the case of *Pooler v. State*, 97 Wis. 627, is not applicable.

The judgment against the defendant *Sweet* must therefore be affirmed.

*By the Court.*— The judgment in each case is affirmed.