State v. Van Brocklin, 194 Wis. 441.

STATE, Plaintiff, vs. VAN BROCKLIN, Defendant.

*November 12—December 6, 1927.*

*Searches: Statutes authorizing clerk of court to issue search warrant: Validity.*

The enactment of ch. 24 of the Laws of 1895, conferring power on the clerk of the municipal court of the city of Oshkosh to issue a search warrant, is authorized under sec. 23, art. VII, Const., the "judicial power" involved in the issuance of a search warrant pursuant to sec. 11, art. I, Const., being no different from that involved in the issuance of a criminal warrant under sec. 361.02, Stats., the issuance of which does not involve the exercise of the judicial power committed by sec. 2, art. VII, to the exclusive jurisdiction of the courts. [*Vejih v. State,* 185 Wis. 21, explained.]
    ESCHWEILER and CROWNHART, JJ., dissent.

CERTIFIED QUESTION from the circuit court for Winnebago county: FRED BEGLINGER, Circuit Judge. *Answered Yes.*

The defendant, *William Van Brocklin,* was convicted in the circuit court for Winnebago county of violation of the prohibition law. During the course of the trial there was introduced in evidence against him certain liquors seized under and by virtue of a search warrant, which search warrant ·was issued by the clerk of the municipal court of the city of Oshkosh, in the county of Winnebago. After conviction and before sentence, deeming the validity of such

search warrant so issued by the clerk of the municipal court an important and doubtful question of law, the judge of that court certified to this court the following question:

"Has the clerk of the municipal court of the city of Oshkosh and Winnebago county power and authority under the act of the legislature creating said court, to wit, chapter 24 of the Session Laws of 1895 and the several acts amendatory thereof, to act upon applications for search warrants, examine witnesses thereon, and determine whether reasonable or probable cause exists upon such applications for the issue of the search warrant, and, if so determined by him to exist, to issue said search warrant accordingly; and is the search warrant issued by him in this case under the general supervision of and control of the judge of the court over the acts of the clerk prescribed by the said act of the legislature, valid and lawful notwithstanding the absence of the judge at the time this search warrant was issued, and notwithstanding that the judge of said court took no part in the proceedings for the issue of this particular warrant?"

For the plaintiff there was a brief by *Frank B. Keefe,* district attorney of Winnebago county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Keefe* and *Mr. Messerschmidt.*

For the defendant there was a brief by *Reilly & O'Brien* of Fond du Lac, and oral argument by *J. E. O'Brien.*

OWEN, J.    The act creating the municipal court of the city of Oshkosh, in the county of Winnebago (ch. 24, Laws of 1895), confers upon the clerk of that court the following powers, among others: "He may examine on oath all persons applying for warrants, may reduce their examination to writing and file the same, and may issue all warrants and other processes from said court."    The search warrant in question was issued by the clerk of that court pursuant to the power so conferred.    The defendant contends that the issuance of the search warrant constitutes a judicial act, power to perform which cannot be conferred upon the clerk of the court under the constitution, which provides (art. VII,

sec. 2) : "The judicial power of this state, both as to matters of law and equity, shall be vested in a supreme court, circuit courts, courts of probate, and in justices of the peace." This same section also authorizes the legislature to vest such jurisdiction as shall be deemed necessary in such municipal and inferior courts as may be created by legislative enactment.

It will be noticed that the section speaks of the judicial power as to "matters of law and equity." This no doubt describes judicial power in its broadest sense. It is this broad conception of the judicial power that is vested exclusively in the courts. It is often assumed that any function partaking of the nature of judicial power cannot be vested anywhere but in the courts. But this view is not sanctioned· by the best considered authority. In Rawle's third revision of Bouvier's Law Dictionary (8th ed.), judicial power is defined thus: "It is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision," citing Miller, Const. U. S. 314. Also: "The power conferred upon courts in the strict sense of that term; courts that compose one of the great departments of the government; and not power in its judicial nature, or *quasi*-judicial, invested from time to time in individuals, separately or collectively, for a particular purpose and limited time," citing 1 Blatch. 635; *Gilbert v. Priest*, 65 Barb. (N. Y.) 444, 448. In vol. 2, Words and Phrases (2d series) 1268, we find many cases cited to the proposition that "Judicial power is that power which adjudicates and protects the rights and interests of individual citizens, and to that end construes and applies the laws." In *State ex rel. Ellis v. Thorne*, 112 Wis. 81, at p. 87 (87 N. W. 797) it is said:

"The language of the constitution is·: 'The judicial power of this state, both as to matters of law and equity, shall be vested in' the courts mentioned. The term 'matters of law and equity' refers to the administration of the law in actions and proceedings in courts of law and equity,—the exercise of such power in such matters as was exercised by such courts

State v. Van Brocklin, 194 Wis. 441.

at the time of the adoption of the constitution. As said in *Callanan v. Judd,* 23 Wis. 343, 349, the proper construction of the term 'judicial power in matters of law and equity' is such power as the court, under the English and the American systems of jurisprudence, had always exercised in actions at law and in equity. To act judicially, and to act judicially in a matter at law or in equity,—or, in other words, in actions at law or suits in equity,—are not necessarily the same. Every officer or board that is required, in the administration of the law, to determine whether a duty exists, or determine from facts, by the exercise of judgment, a course of action, within legislative restraints or guides, must necessarily act judicially in a sense. The power often partakes so much of the judicial function that it is spoken of as *quasi*-judicial. Manifestly, an officer or board, or other tribunal other than a court, may act judicially in the sense above mentioned and not to do anything falling within the meaning of the term 'judicial power as to matters of law and equity;' and so a judicial officer may perform acts officially outside of such matters,—mere ministerial acts.'"

Speaking of the very question which we are here considering, namely, whether a clerk of the court may be vested by the legislature with power to issue warrants, the supreme court of Alabama said:

"The act creating the inferior court of criminal jurisdiction in the city of Birmingham conferred upon the clerk the power to issue warrants of arrest. It is argued that the issue of warrants of arrest is a judicial power, which can be conferred only upon a judicial officer. It implies the power and the duty to hear and determine the question of probable cause. The principle of this contention was long ago disposed of by the decisions of this court. In *Ex parte Gist,* 26 Ala. 156, it was argued with great learning that the section of the judiciary act of the United States conferring power upon justices of the peace to arrest, imprison, or bail persons charged with a violation of the criminal law of the United States was repugnant to the constitution of the United States, for the reason that it conferred judicial power upon one not an officer of the United States, whereas that constitution provides that the judicial power of the United States

shall be vested in one supreme court and such other inferior courts as Congress may, from time to time, ordain and establish. This court, conceding that the power and authority conferred was judicial in its nature, held that it did not fall within the meaning of 'judicial power' in the sense in which that term is used in the constitution of the United States. And the court referred to the case of *Gaines v. Hardin,* 19 Ala. 491, where a similar provision in our constitution came under review, and where it was held that it was not the intention of the framers of the constitution to deny to the legislature the power to confide to ministerial officers, who do not constitute a part of the judiciary, properly so called, many duties involving inquiries in their nature judicial. In the case referred to it was said: 'The practice of this, as of all other governments having their judicial, executive, and legislative departments separate and distinct, very clearly shows that, in the administration of laws, inquiries partaking of the nature of judicial investigations are confided to persons other than judges, whose acts have never been questioned on constitutional questions,'—and more in the same line. The statute in this case conferred no power upon the clerk to finally hear and determine, nor even to commit to bail, but only to issue warrants, which must be construed to authorize him to issue warrants on probable cause, supported by oath or affirmation, and returnable, by necessary implication, to the court from which they are issued. We are not prepared to say that this was an unconstitutional exercise of power." *Kreulhaus v. Birmingham,* 164 Ala. 623, 51 South. 297.

In harmony with this conception of the nature of the judicial power which is confided exclusively to the courts, it has been generally held that the legislature may confer upon the clerk of a court the power to issue criminal warrants. 5 Ruling Case Law, 627; 26 L. R. A. N. s. 493, 495; *In re Siebert,* 61 Kan. 112, 58 Pac. 971; *In re Durant,* 60 Vt. 176, 12 Atl. 650; *State v. Dibble,* 59 Conn. 168, 22 Atl. 155. These cases all hold that the legislature may authorize the clerk of the court to issue criminal warrants. In *State v. Dibble, supra,* it appeared that the charter of the city of New Haven pro-

vided that process of the city court should be deemed to be issued by the court when issued or signed by the judge or assistant judge or the city attorney. A warrant issued by the city attorney upon an affidavit signed by himself was upheld. *State v. Sureties of Krohne,* 4 Wyo. 347, 34 Pac. 3, is an illuminating case upon this subject, although that case involved the power of a clerk of court to fix and let to bail.

Bouvier's Law Dictionary defines a warrant as "a writ issued by a justice of the peace *or other authorized officer,* directed to a constable or other proper person, requiring him to arrest a person therein named, charged with committing some offense, and to bring him before that or some other justice of the peace," plainly implying that officers other than judicial officers may be authorized to issue the writ. While it is held in *People v. Colleton,* 59 Mich. 573, 26 N. W. 771, that the issuance of a warrant involved judicial action, which cannot be performed by the clerk, our investigation indicates that the jurisdiction of Michigan stands alone upon this question. We find no other case so holding.

The power of the clerk pursuant to legislative authorization to issue a criminal warrant has been upheld by this court. In *Ryan v. State,* 83 Wis. 486, 53 N. W. 836, a warrant issued by the clerk of the municipal court of Ashland county was directly challenged. The clerk was authorized to issue the warrant by the act creating the court. The court said: "These acts of the clerk are all under the supervision of the judge of the court and subject to his control. In a certain sense they are the acts of the judge or the court." While the reasoning upon which the warrant was upheld was based upon a fiction, and, as now appears, unnecessary, nevertheless the expediency of the practice was recognized and the power sustained.

In *Bianchi v. State,* 169 Wis. 75, 171 N. W. 639, the warrants were issued by the clerk of the municipal court of Milwaukee county. While the validity of the warrants was

State v. Van Brocklin, 194 Wis. 441.

directly challenged, it was not upon the ground that it was beyond the power of the legislature to vest such authority in the clerk of the municipal court. The warrant was challenged because issued upon the mere affidavit of the complainant, the point urged being that "A magistrate or his clerk must examine the complainant before there is jurisdiction to issue a warrant" under our statute.

While we have thus reviewed the authorities to indicate that it is not generally considered that the issuance of a criminal warrant involves the exercise of that judicial power which the constitution commits to the exclusive jurisdiction of courts, it is unnecessary to go any further than the constitution itself to vindicate the right of the legislature to confer such authority upon clerks of courts. Sec. 23, art. VII, of the constitution provides that "The legislature may provide for the appointment of one or more persons in each organized county, and may vest in such persons such judicial powers as shall be prescribed by law. Provided, that said power shall not exceed that of a judge of a circuit court at chambers." It is evidently under this provision of the constitution that the legislature has provided for the appointment of circuit court commissioners and conferred upon such commissioners the powers that may be exercised by a judge of the circuit court at chambers. But there is no reason to say that by providing for the appointment of court commissioners the power conferred upon the legislature by this provision of the constitution has been exhausted. Under this power it would seem that the legislature had the undoubted right to authorize clerks of municipal courts to issue criminal warrants.

Having arrived at the conclusion that clerks of municipal courts may be authorized to issue criminal warrants, it follows as a corollary that they may also be authorized to issue search warrants. The judicial power involved in the issuance of a search warrant under the constitution is no differ-

ent from the judicial power involved in the issuance of a criminal warrant under sec. 361.02 of our Statutes. The constitution (art. I, sec. 11) provides that no search warrants "shall issue but upon probable cause, supported by oath or affirmation." Sec. 361.02, Stats., relating to the issuance of criminal warrants, provides that the magistrate shall examine the complainant on oath "and any witness produced by him, and shall reduce the complaint to writing and shall cause the same to be subscribed by the complainant; and if it shall appear that any such offense has been committed the magistrate shall issue a warrant," etc. So far as the exercise of judicial power is concerned, it is no greater with reference to the one than with reference to the other. At any rate, the constitutional provision noted fully authorized the legislature to vest authority to issue either warrant in the clerk of a municipal court.

It is said that this court negatived the power of a clerk of a court to issue a search warrant in *Vejih v. State,* 185 Wis. 21, 200 N. W. 659. It is true that the search warrant there under consideration was issued by a clerk of a municipal court. Its validity was challenged because of that fact and the further fact that it was issued in the absence of a finding of probable cause. This court merely said that the warrant was void "because not issued by a magistrate upon findings of probable cause." The question of whether a clerk of a court had power to issue the warrant was not considered. It had recently been held by this court that a search warrant could issue only upon a finding of probable cause. For the lack of such finding the search warrant was void. The court did not there pass upon the question of whether a clerk of a court may be authorized to issue a search warrant.

*By the Court.*—The question certified is answered Yes.

Eschweiler, J. (*dissenting*). Being satisfied that the clerk of the municipal court of Oshkosh has no power to issue a search warrant under the statute creating that court

and relied upon as giving such power, and that the legislature cannot confer such a power, I must dissent.

That such warrants may have been issued by the clerk of that court or by such other clerks I do not think is entitled to importance here, any more than was the long practice in the eminent domain proceedings under the Milwaukee city charter which was overturned in *State ex rel. Allis v. Wiesner,* 187 Wis. 384, 398, 204 N. W. 589.

It appears to me that there is an important, fundamental, and constitutional distinction between *search* warrants here involved and the ordinary warrant for the arrest of the person. The latter is the method of bringing an individual before the court for further proceedings there, and there is not the same need of a precedent judicial action, for in the many instances of misdemeanors committed in the presence of a peace officer and in many cases of felonies, the arrests, which are the object of the ordinary warrant, may be made without any prior warrant. It is the *search* warrant alone that is evidently expressly and particularly referred to in the constitution, art. I, sec. 11. The legislative regulation for the two is in separate and independent chapters: ch. 361, Stats., for the issuing of the warrant of arrest; and ch. 363, devoted exclusively to the search warrant. In each chapter it is provided by whom the respective kinds of warrants may be issued; sec. 363.01 refers to those designated in 361.01, which specifically mentions judges of courts of record, court commissioners, and justices of the peace, but clerks of courts are conspicuous by their absence. The clerk of the circuit court is a constitutional officer (sec. 12, art. VII, Const.), yet neither there nor in the statutes defining his duties, sec. 59.39, is there anything in the nature of a conferring of judicial power or authorizing him to issue either form of warrants.

By these two chapters there is recognized substantial distinctions between the two.

Under ch. 361 the magistrate, upon it appearing that an

*offense* has been committed, shall issue a warrant for the arrest of the person accused (sec. 361.02). He is not required to determine at that stage of the proceedings anything more than that an *offense* has been committed; he is not then required to also determine that the *person* against whom the warrant issues is the probable offender. That important feature does not come into the proceedings or within the statute until the time of the preliminary examination before the magistrate and with the then opportunity given a person charged to hear and examine the witnesses (secs. 361.12, 361.13). After such hearing then again must the magistrate determine that an *offense* has been committed, and then, and now for the first time, find that there is probable cause to believe some particular individual guilty (sec. 361.18), and no statutory distinction can be found between the nature of the judicial power to be exercised when finding probable cause as to the defendant being the one who committed the offense and the same power to determine that an offense has been committed. On the other hand, under ch. 363 there must be a judicial determination on two distinct features before the search warrant can be issued, namely : it must be shown that property has been taken, etc., and further that it is concealed in some particular house or place (sec. 363.01).

While it is true that in the provisions of both these chapters the word "warrant" is used without any descriptive word in connection with it, and the same is true in the constitutional provision above stated, yet the inherent distinctions between the two are not thereby minimized or destroyed. The execution of the warrant for arrest merely brings a person before the court for a hearing and further proceedings, while as to the search warrant its function is practically over at the moment it is executed. The principal office of the search warrant is to obtain the evidence not otherwise obtainable to be used in the prosecution of some individual. It is therefore protected by another provision of the same article

of our constitution, sec. 8, which reads: "No person shall be compelled in any criminal case to be a witness against himself," and citations are unnecessary that such additional constitutional safeguards apply to the evidence obtained by a search warrant such as was used in this case.   Such second constitutional safeguard in said sec. 8 has no applicability to the issuing or serving of the ordinary warrant of arrest.

To summarize: The warrant for arrest requires but one prerequisite, a judicial conclusion that an offense has been committed; the search warrant requires not only that one. but the added one that the person or place to be searched is the *probable* person or place.

This court has recently recognized the substantial distinctions between the two.   In *Bergman v. State,* 189 Wis. 615, at p. 618 (208 N. W. 470), it said: "The proceeding in relation to a search warrant is in the nature of an investigation, and differs materially in its objects and purposes from one instituted for the arrest of an offender for the commission of a criminal offense."

Because of the substantial difference between these two, . it by no means follows that even if the warrant for arrest could be issued by the clerk of the court that the search warrant may also be so issued.

In any event it is only after and by the exercise of *judicial power* that the search warrant in this state can be lawfully issued under the constitution, for this court has expressly held that the issuing of a search warrant is.a *judicial,* not a ministerial or administrative act.   *State v. Baltes,* 183 Wis. 545, 552, 198 N. W. 282; *State v. Blumenstein,* 186 Wis. 428, 430, 202 N. W. 684; *Hansen v. State,* 188 Wis. 266, 268, 205 N. W. 813.   It is treated as such in *Frihart v. State,* 189 Wis. 622, 624, 208 N. W. 469.   It is so held in *People v. Fons,* 223 Mich. 603, 606, 194 N. W. 543, saying: "In determining probable cause the magistrate is called upon to perform a judicial act;" so again in *Toms v. Judge of*

*Recorder's Court,* 237 Mich. 413, 212 N. W. 69; in *State v. Lock,* 302 Mo. 400, 419, 259 S. W. 116, 123, it is said that such "is a judicial function which may not be delegated." To the same effect is *Cox v. Perkins,* 151 Ga. 632, 107 S. E. 863, 16 A. L. R. 918.    In *Rosanski v. State,* 106 Ohio St. 442, 140 N. E. 370, holding that there need be no finding of probable cause as a basis for issuing a search warrant and that such may be issued by a clerk, it is expressly held that such is a *ministerial* act, and that case therefore can have no weight in this state.    See, also, *Wadley v. McCommon,* 154 Ga. 420, 114 S. E. 357.

Being a judicial act, therefore, and as much so as in the necessary finding of probable cause as to a defendant's guilt of the offense in binding over for trial (sec. 361.18, Stats.), there certainly should be found some express power to grant, and some express grant of such judicial power on such an administrative or ministerial officer as a clerk of court.

Much weight is given in the majority opinion to the long practiced statutory power of the clerk of the circuit court to enter default judgments under sec. 270.62, Stats.    The question as to the validity of such practice was presented in *Wells v. Morton,* 10 Wis. 468, and both majority and minority opinions there (pp. 469, 471, 472, and 477) are expressly in accord that such entry of judgments is *not* by virtue of the transfer to the clerk of any of the *judicial power* vested in the courts by sec. 2, art. VII, Const.    In no subsequent case can it be found that this court has, until now, declared that a clerk of a court can be given judicial power.    The cases of *Ryan v. State,* 83 Wis. 486, 53 N. W. 836; *Sheffel v. State,* 97 Wis. 377, 72 N. W. 888; and *Pooler v. State,* 97 Wis. 627, 630, 73 N. W. 336, all referring to this subject matter, did not have the question here squarely before them and did not rule upon it.    The very limited authority as a ministerial officer that the clerk of the circuit court has in the entry of default judgments is shown in *Electric Appliance Co. v.*

*Warren,* 115 Wis. 477, 478, 91 N. W. 970, and the well recognized rule is that application to open just such judgments must be made to a real judicial officer and not to the clerk who entered them. *Marshall Field & Co. v. Fishkin,* 180 Wis. 149, 154, 192 N. W. 463.

The suggestion that possibly the legislature (undoubtedly unconsciously, however) dipped into a reservoir of judicial power, viz. sec. 23, art. VII, Const., quoted by the majority opinion, in making this grant by the special statute, ch. 24, Laws of 1895, giving to a clerk of an inferior court far greater power than any conferred on the higher constitutional officer, the clerk of the circuit court, and as presented in the majority opinion, seems rather far-fetched and is certainly novel.

It has never heretofore been even suggested that such sec. 23, art. VII, has ever been looked to in support of judicial power other than that in the creation of the well known and long established office of court commissioner.  The very guarded exercise heretofore of this power to create such subordinate judicial office is quite indicative of the idea that the legislature has had a consistent theory favoring a very restrictive use of such grant or source of power.  The number of such officers has always been expressly limited, viz. originally by sec. 75, ch. 10, R. S. 1849, one to the county, by amendment thereafter, up to six per county, except in counties having more than one circuit judge (sec. 252.14); express statutes give county judges the power of court commissioners, Laws of 1848, sec. 18, p. 23; sec. 252.16; so, also, as to special municipal courts, ch. 651, Laws of 1907, sec. 2523—8, Stats. 1911; no inferior courts, such as a municipal court like the one here in question, appear to have ever had the power to appoint such; their powers are expressly defined, sec. 252.15; their fees regulated, sec. 252.17; no illustration is afforded of any single prior instance in the state's history where it has been asserted or claimed that said

sec. 23, art. VII, Const., *supra,* has been considered as a legislative source of power for any other office or officer than court commissioner.

That even such an officer as justice of the peace, of constitutional recognition and dignity, takes nothing by implication, has been the rule from first to last in this state: *Cox v. Groshong,* 1 Pin. 307, 312 (1843); *State v. Kriegbaum, ante,* p. 229, 215 N. W. 896 (1927), and would seem to require a holding that power to issue a "warrant" (for so the law here reads) does not carry with it the power to perform the judicial and twofold duties required for *search* warrants—the one process that is fettered by two constitutional provisions.

If the power to issue search warrants may be conferred upon such officers as clerks of court, there would seem no good reason why they may not also be empowered to determine whether probable cause exists for binding over for trial; to fix the punishment on pleas of guilty; or even to try offenders.

For the above reasons I dissent.

I am authorized to state that Mr. Justice CROWNHART joins with me in this dissent.