## Ex parte GIST.

1. The thirty-third section of the judiciary act of 1789, (U. S. Statutes at Large, vol. i, p. 91,) which empowers justices of the peace and other officers therein named to arrest and commit (or bail, as the case may require) persons charged with a violation of the criminal law of the United States, is not unconstitutional: the authority thus conferred on justices of the peace is not "judicial power" within the third article of the Federal constitution, nor does the exercise of it make them Federal officers within the second clause of the second section of the second article.

APPLICATION for the writs of *habeas corpus* and *certiorari* to bring before this court (with the body of the petitioner) certain proceedings had before the Hon. A. J. WALKER, chancellor, &c., on the petition of Jerome B. Gist to obtain his discharge from confinement in the county jail of Madison. The petition averred that the prisoner was arrested by the United States marshal of the Northern District of Alabama, under a warrant issued to him by a justice of the peace in Madison county, upon the affidavit of the postmaster at Huntsville charging said Gist with having robbed the United States mail; and the ground of the application was, that the justice had no authority to act in the premises. The chancellor refused to discharge the prisoner, who now petitions this court for relief.

ROBERT C. BRICKELL, for the petitioner:

The power conferred by the 33d section of the "judiciary act" upon justices of the peace, is, to arrest, imprison, or bail, as the case may require, persons charged with a violation of the criminal law of the United States. The power thus conferred is judicial, as contra-distinguished from ministerial. The mere arrest may be ministerial; but the imprisonment, or holding to bail, is judicial. Under this act, the justice must inquire whether a crime or offence against the United States has been committed,—whether there is reasonable ground to believe that the person charged committed the offence; and must then determine whether the offender shall be bailed, and, if bailed, in what sum. To determine these matters, he must hear evidence; and hearing evidence includes the power to

determine what is admissible, and what inadmissible evidence. The exercise of these powers, no matter on whom devolved, is the exercise of judicial power. In 1 Salk. 199, it is said, "Whenever a power is given to examine, hear, and punish, it is a judicial power, and they in whom it is reposed act as judges." "A public officer, lawfully appointed to decide litigated questions of law, is a judge."—1 Bouv. Law Dic., p. 724. This court, in Butler v. Foster, 14 Ala. 325, say, that the authority to admit to bail cannot be delegated, "because a judicial officer cannot delegate to another the powers and authority entrusted to him."

If the power be judicial, it is a part of the judicial power of the United States. This cannot be controverted. It is the law of the United States that has been violated ; that law creates the offence, affixes the penalty, and provides the mode of arrest, trial, and conviction. No such offence is known to any other law. The law is designed for the protection of a department of the United States Government—a department exclusively under the control of that Government. Then, if the power exercised be a part of the judicial power of the United States, the inquiry is, Can Congress confer any part of the judicial power of the United States on State tribunals? The constitution provides, that the judicial power of the United States shall be vested in one Supreme Court and such other inferior courts as Congress may, from time to time, ordain and establish. This clause of the constitution has undergone a judicial construction, in Martin v. Hunter, 1 Wheat. 323 ; in which Mr. Justice Story holds, that it is the duty of Congress to vest the whole judicial power of the United States in courts established by itself. On page 328, he propounds this inquiry : "How otherwise could crimes against the United States be tried and punished?" On page 336, he says : "No part of the criminal jurisdiction of the United States can be delegated to State tribunals"; and on page 330, he says : "Congress is bound to create some inferior courts, in which to vest all that jurisdiction which, under the constitution, is exclusively vested in the United States." The test of this exclusive jurisdiction is shown on a subsequent page (335) to be this : "Had the State courts, before the adoption of the constitution, jurisdiction ? and does the case arise un-

der the constitution, laws, and treaties of the United States ? If the case arises under the constitution, laws, and treaties of the United States, and the State courts had not jurisdiction prior to the adoption of the constitution, they have it not now, and it cannot be conferred on them by Congress." In this case, the State courts, prior to the adoption of the constitution, had not jurisdiction of the offence charged against the petitioner : it is impossible that they could have possessed such jurisdiction, because the offence itself did not then exist ; it is created by a law passed pursuant to, and in execution of, a power delegated by that constitution to the General Government ; it is a consequence of a department established by that Government, and designed for its protection. In the case of United States v. Lathrop, 17 Johns. 4, C. J. Spencer holds, that State courts have no jurisdiction of criminal offences against the United States, nor of the penal law of the United States ; nor can jurisdiction be conferred upon them by Congress. That case was a suit instituted to recover a penalty given by an act of Congress, which authorized suits therefor in the State courts. A similar decision was made in Ely v. Peck, 7 Conn. 239.

The precise question here presented arose in Almeida's case, before Justices Hanson and Bland, in Maryland, in 1817 ; their opinions may be found in the 12th vol. Niles' Register, pp. 114, 231. In that case, the petitioner was discharged, because his arrest and commitment by a State magistrate, for an offence against the United States, were unwarranted by law. Subsequently, Judge Cheves decided the case of *Ex parte* Rhodes ; holding, that the arrest and commitment under similar circumstances were legal. His opinion, which will be found in 12th vol. Niles' Register, p. 264, is rested on two grounds, viz., that the duty performed by the justice of the peace is not judicial ; and that he, as a judge of a State court, could not take cognizance of the case. The argument is, that justices of the peace were originally mere conservators of the peace, and that the power which they exercise under the act of Congress is merely incipient and ancillary to the judicial powers of the United States. In determining whether a particular power is judicial or ministerial, it is immaterial to inquire on whom it is conferred, or the character of the officer

by whom it is to be exercised : it is the duty to be performed, and not the character of the officer performing it, that fixes the distinguishing character of the duty itself. If an inquiry into the character of the officer performing the duty is material, is it not apparent from the character of the officers upon whom this duty is devolved, concurrently with the justices of the peace, that the duty is judicial? By the act, this duty is to be performed " by any justice or judge of the United States, or by any justice of the peace." Did Congress intend to degrade its judicial functionaries into mere ministerial officers of the courts over which they preside? But, says the judge, the power to be exercised is only incipient and ancillary to the judicial power. Concede this to be true, and it does not alter the case. The importance of the duty is not the question. What is that duty? and how is it to be performed? are the inquiries. A man may exercise judicial power, in determining litigation involving one dollar, equally with him who determines litigation involving one thousand dollars. The function he is required to perform is, to hear, weigh, and determine the effect of evidence. If so, then his power—his duty—is judicial, not ministerial.

Suppose we concede that the justice acts ministerially; how does that affect the question? Of what power is he the ministerial officer? Certainly not of the State of Alabama. Then he must be the ministerial officer of the General Government. An office is a charge or trust conferred by public authority.—7 Porter 371. Bacon and Bouvier define an office to be, a public function or employment; and whoever exercises this function or employment by legal authority, with the right to take the emoluments appertaining thereto, is an officer. If he be an officer, Congress had not the authority to appoint him. By the constitution, the President has the authority, by and with the advice and consent of the Senate, to appoint " all officers of the United States whose appointments are not herein otherwise provided for ; but Congress may, by law, vest the appointment of such inferior officers as they think proper in the President alone, in the courts of law, or in the heads of departments." It has been held by the Supreme Court, that a clerk of the District Court is an inferior officer, within the meaning of the constitution.—*Ex parte*

Hennen, 13 Peters 230. In the case of Amer. Ins. Co. v. Canter, 1 Peters 511, it is held, that territorial courts are no courts, within the meaning of the constitution, in which the judicial power conferred by the constitution can be vested. Thus, we see, that if the justice be a ministerial officer, Congress cannot appoint him.

Is the petitioner entitled to the writ of *habeas corpus* ? He is, unless the justice of the peace had the power to commit him to jail ; and this is the inquiry on the writ of *habeas corpus*.—Cable v. Cooper, 15 Johns. 156 ; Spalding v. People, 7 Hill 30. Nor is it any objection that the case arises under the laws of the United States. If those laws authorize the prisoner's detention, the court will declare that detention legal ; if they do not authorize his detention, then a pretence of authority from those laws is no better than any other pretence.—State v. Dimmick, 12 N. H. 196. The State courts have concurrent jurisdiction with the courts of the United States in all such cases.—7 Barr 336 ; 11 Mass. 63 to 83; 24 Pick. 227; 7 Cowen 471.

The attention of the court is particularly requested to the article on page 377 of the 12th vol. Niles' Register, entitled " National Question," which is an able review by Judge Bland of Judge Cheves' opinion in the case of Rhodes *Ex parte.*

Justices of the peace have no jurisdiction, except such as is conferred on them by statute.—Bridge v. Ford, 4 Mass. 641. Our decisions, in effect, assert the same principle.—Williams v. Hinton, 1 Ala. 297. The Code, specifying the powers of a justice (§ 712), concludes thus : " To exercise such powers as are or may be conferred on him by law." Section 3378 confers the power on them to issue warrants of arrest. The opinion expressed by Chancellor Kent, that it is the law and usage of nations to deliver up persons charged with felony, or any other high crime, to the sovereignty whose law has been violated, is not sustained by authority, and has not been followed by other courts of this country.—2 Brock. 493 ; 10 Serg. & R. 123; 2 Caines' R. 212 ; 12 Verm. 631; 14 Peters' R. 540; 2 Sum. 482 ; 14 Johns. 340.

But, even if the principle asserted by Chancellor Kent be correct, and applicable to the case, the petitioner is neverthe-

less entitled to his discharge. A "reasonable time" has been afforded "for the foreign government to make the requisite application to the proper authorities for his surrender"; a term of the court, at which, if guilty, he should have been indicted, has passed ; no court was held ; no step was taken to surrender him, nor to expedite his, release from imprisonment. For more than six months he has been restrained of his liberty, awaiting the action of those charged with his prosecution. No principle of comity can require his further imprisonment.

CHILTON, C. J.—The petitioner was committed to jail, and detained under a warrant of commitment for robbing the United States mail, issued by a justice of the peace of Madison county, in conformity to the 33d section of the act of Congress approved 24th September, 1789.—1 Stat. at Large 91, § 33.

It is not denied that Congress may constitutionally pass the law for the violation of which the prisoner stands committed ; but it is insisted for the petitioner, that the 33d section of the judiciary act confers *judicial power* upon a *State officer*, in violation of section 1, article III, and the second clause of section 2, article II, of the Federal constitution.

We concede, that the power or authority conferred by this section of the judiciary act is in its nature judicial. The justice of the peace is called upon to exercise judgment and discretion : he is to judge of the sufficiency of the affidavit on which the warrant of arrest is founded; he must determine, upon the evidence adduced against the prisoner, whether there is a reasonable ground of suspicion against him, so as to require that he should be put upon trial for the offence ; and he is to imprison, or take bail for the appearance of the party at court to abide his trial.

But, although such authority involves in its exercise judicial functions, we are very clear it does not fall within the meaning of "*judicial power*," in the sense in which that term is used in the third article of the constitution.

In the distribution of powers possessed by the Federal Government upon three separate bodies of magistracy, the constitution deals in general language. All its legislative powers are vested in Congress,—the executive powers in the

President,—and "the judicial power shall be vested in one *Supreme Court*, and in such *inferior courts* as the Congress may from time to time ordain and establish."

It is manifest, we think, that by the term "judicial power" is here meant that power with which the *courts* are to be clothed for the purpose of the *trial* and *determining* of causes. The *judges* of these *courts* are to hold their offices during good behavior; and this "judicial power" is to extend to all "*cases*", in law and equity, arising under the constitution, &c. It was not intended by the general terms here employed to deny to the other departments the exercise of powers in their nature judicial, if essential to render the powers expressly delegated to them effectual. Hence it is, that Congress, having the power to organize the Postoffice Department, and to provide for the punishment of offenders against the laws enacted for the protection of the mail, have, as a further necessary incident, the power to provide for the arrest and safe-keeping of such offenders, until, by the exercise of the judicial power proper, on the part of the courts having jurisdiction of such cases, they are indicted and tried for the crime. So, also, although the President is the executive officer of the Government, he is constantly called on in the discharge of his duties to perform acts in their nature official. The same may be said of the heads of the respective departments of the Government.

We, however, deem it unnecessary to enter at length upon the discussion of the constitutional question, whether Congress may not, as a necessary and proper means for the accomplishment of an end clearly within the scope of its legitimate power, enact laws conferring powers judicial in their nature upon State magistrates. This right has been recognized by every department of the Government ever since the adoption of the Federal constitution, has received, on more occasions than one, the solemn sanction of the Supreme Court of the United States, and has virtually been affirmed by the Supreme Court of this State. The act under consideration was passed at the first session of Congress after the adoption of the constitution, and has remained upon the statute book until the present. It was followed by another act of the 12th February, 1793, which authorized State magistrates to give a certificate

for the extradition of fugitives from labor, or fugitive slaves. This latter act was called in question, and the power of Congress to pass such laws was closely scrutinized by learned counsel, in the great case of Prigg v. The Commonwealth of Pennsylvania, 16 Peters 539 ; and the court there held the following language : "As to the authority so conferred upon State magistrates, while a difference of opinion has existed, and may still exist, on the point, in different States, whether State magistrates are bound to act under it, *none is entertained by this court that State magistrates may, if they choose, exercise that authority, unless prohibited by State legislation.*"

So, in Moore v. The People of Illinois, (14 How.), this case is virtually re-affirmed ; and in The United States v. Ferriera (13 *ib.* 48), Chief Justice Taney, speaking of the powers conferred upon certain officers under the treaty with Spain of 1819, said : "The powers conferred by Congress upon the judge, as well as the secretary, are, it is true, judicial in their nature ; for judgment and discretion must be exercised by both of them. But it is not judicial in either case, in the sense in which judicial power is granted by the constitution to the courts of the United States."

The same doctrine received further consideration in the matter of Kane (14 How. 103) ; and although the Supreme Court was divided upon the question of jurisdiction which that court possessed over the case as made by the petitioner, it appears that all the judges conceded the constitutional right of Congress to pass the law in question, vesting powers judicial in their nature in officers, to be exercised by them not sitting in the capacity of courts of the United States.

So likewise, in our own court, in the case of Gaines v. Harvin (19 Ala. 491-8), a similar provision in our State constitution came under review ; and we there held, that it was not the intention of the framers of the constitution to deny to the Legislature the power to confide to ministerial officers, who do not constitute a part of the judiciary properly so called, many duties involving inquiries in their nature judicial. It was said : "The practice of this, as of all other governments having their judicial, executive and legislative departments separate and distinct, very clearly shows that, in the administration of the laws, inquiries partaking of the nature of ju-

dicial investigations are confided to persons other than judges, whose acts have never been questioned on constitutional grounds."

As the question before us is not whether Congress, acting within the sphere prescribed by the constitution, has the power to provide for the arrest and commitment of offenders against the criminal laws of the United States, but merely whether, under the clause of the constitution above alluded to, this power has been properly exercised, the same rules of construction which would apply to a similar provision in our State constitution would apply to the article under consideration.

But to conclude : The act in question was passed by the first Congress which assembled after the adoption of the constitution. The government was then principally administered by those who had framed that instrument. It must be regarded as a contemporaneous legislative exposition of the constitution, made after very mature deliberation and discussion. It has been acquiesced in ever since, and has been repeatedly recognized as a valid law by every department of the government ; and if any question should be considered as put to rest by long acquiescence, contemporaneous expositions, and extensive and uniform recognition of its validity, the one before us would certainly fall within that category ; and if we were doubtful as to the constitutionality of this law, these considerations would go far, if indeed we should not be required under the decisions of the Supreme Court of the United States, to determine in favor of its validity.—Stuart v. Laird, 1 Cranch 299 ; Martin v. Hunter, 1 Wheat. 204 ; Cohen v. Commonwealth of Virginia, 6 *ib.* 264 ; Prigg v. The Commonwealth of Pennsylvania, 16 Peters 621.

There is nothing in the objection that the exercise of this power makes the justice a Federal officer within the meaning of the second clause of the second section of article II of the constitution. He renders a voluntary service, and in an enlarged sense is, *pro hac vice,* an officer, but not one within the meaning of the clause above referred to. He is an officer of the State, and permitted by the State to aid the Federal Government in securing offenders against the criminal laws of the Union, so that they may be brought to trial before the Fed-

eral courts : and this power, we are of opinion, he may constitutionally exercise.

The petitioner having shown that he is not entitled to the relief which he seeks, the application for *habeas corpus* and *certiorari* must be overruled, with costs.