THE STATE ex rel. BOARD OF EDUCATION OF ST. LOUIS v. NAST, Clerk of the Circuit Court for Criminal Causes in St. Louis, and the CITY OF ST. LOUIS.

. In Banc, February 27, 1908.

1. **FINES: Right of School Board to: Constitutional Court.** The Legislature cannot direct the fines imposed by a legal court as punishment for crime, to be paid into the city treasury. Such fines belong to the public school fund of the county, and the school board can compel them to be paid to it. But if such fines were collected by a court which has no constitutional and lawfully-created existence, then it had no right to impose fines, and the school board has no right to demand and receive them when paid.

2. **DEMURRER: Effective to Test Legal Right.** It is a good ground of demurrer that plaintiff has no legal right, title or interest in the thing demanded; and in such case it makes no difference what may be the nature of defendant's title to the thing.

3. **COURT OF GENERAL SESSIONS.** The St. Louis Court of General Sessions, created by the Act of the General Assembly of 1907, is not a constitutional court, and had no authority to impose fines for misdemeanors on pleas of guilty or otherwise, and could neither try nor punish any offense against the laws of this State.

4. ———: **New Provisions.** The Act of 1907, creating the St. Louis Court of General Sessions, conferred upon it no civil jurisdiction of any character whatever, and said: It "shall have exclusive jurisdiction in the city of St. Louis, of the hearing and determination of all preliminary examinations of charges of felony, and the judge of said court shall possess all the power of an examining magistrate in felony cases as exercised by justices of the peace generally under the laws of this State;" and, "whenever, in the course of any proceeding in said court upon an information for felony, it shall appear that the defendant has been guilty, in the particular matter, of a misdemeanor only, the court shall discharge the defendant from the felony charge and may admit him to bail to answer an information for the misdemeanor to be filed by the prosecuting attorney in the court of criminal correction, or, in default of bail, commit defendant to jail......But if the defendant in such case desire to plead guilty to such misdemeanor and to receive sentence

therefor, waiving his right to a jury and to an information for the misdemeanor, the court may accept such a plea of guilty and assess such punishment as may be fixed by law for the offense, and issue a commitment or execution therefor." *Held,* that this act did not create a court.

5. ———: **An Anomaly.** To denominate a body a court and to accord it criminal jurisdiction, without giving it any power to hear or determine a cause or render any judgment save by and with the consent of the accused, is an anomaly. It meets none of the constituent conditions which have always attended a court.

6. ———: **Judgment: By Consent.** A judgment of a court is the final determination of a competent court, upon the law and the facts of a given case, and the rule has become canonized that a party or parties cannot by consent confer jurisdiction over the subject-matter of a cause. A decision of an arbiter self-constituted or chosen by the litigants is no judgment. The law must confer the jurisdiction, the right to hear, determine and decide.

7. ———: **Plea of Guilty: No Information.** The provision of the Act of 1907, authorizing an acceptance of a voluntary plea of guilty "without an information for the misdemeanor" is in direct contravention of the Constitution which says that "no person shall be prosecuted criminally for a felony or misdemeanor otherwise than by indictment or information."

8. ———: **Preliminary Examinations.** The power to hear preliminary examinations on charges of felony and misdemeanors is not judicial power, and does not make the body exercising that power a court.

9. ———: **Conservator of Peace.** Nor does an act by making an officer it designates as a judge a "conservator of the peace" thereby constitute him a court.

10. ———: **Habeas Corpus.** Conferring on the judge power to issue writs of *habeas corpus* and to determine the same, without conferring that power on the tribunal itself, is not an apportionment of the judicial power to the tribunal and does not make it a criminal court. Besides, proceedings by *habeas corpus* are civil, and not criminal.

11. ———: **Void in Toto.** The provisions of the Act of 1907, creating the Court of General Sessions, are so interwoven and dependent on each other, and the moving cause for its enactment is so plainly to be seen to be that the Legislature would not have enacted it had it not contained the section directing the fines collected by it to be paid into the city treasury, upon which was placed the burden of its support, that the whole act must be held to be unconstitutional and void.

State ex rel. v. Nast.

Mandamus.

ALTERNATIVE WRIT QUASHED.

*E. M. Grossman* for relator.

(1)   The provision contained in section 17 of the act, directing the clerk of the court to pay all fines, penalties and forfeitures collected by him into the city treasury, is unconstitutional in that it violates section 8, article 11, of the Constitution of the State. State ex rel. v. Warner, 197 Mo. 650; State v. Newell, 140 Mo. 282; State v. Bockstruck, 136 Mo. 335. (2)   A part of the law may be constitutionally invalid and the remainder of it valid, when the objectionable part may be properly separated from the other. State v. Bockstruck, 136 Mo. 335; State v. Newell, 140 Mo. 282. (3) In the event this court declares the law establishing the Court of General Sessions unconstitutional, the clerk of said court admittedly has collected and holds in his possession and has charged himself with certain sums as fines, and therefore should audit them to the credit of and pay them over to the Board of Education.

*Charles W. Bates* and *Charles P. Williams* for respondent City of St. Louis.

It is the essence of every court, as such, that it should have some jurisdiction. It is the character of that jurisdiction which determines the character of the court. Jurisdiction means the power to hear and determine disputed questions between adverse litigants. A criminal court must be, *ex vi termini,* a court that has and exercises criminal jurisdiction. A criminal court as such must have power to try—to hear and determine between the State and the defendant the disputed question of guilt or innocence of the defendant with respect to some charge of crime. Under our constitutional system, where an acquittal of the defendant is

final, a criminal court must be a court whose judgment in that class of litigated questions is final. A court that cannot have a jury, that has no power to try any person for any crime, cannot be a criminal court within the meaning of the Constitution. Whoever may be entitled to such sums of money, collected or to be collected, the relator can claim no title to, or interest in, them, for the reason that such exactions are not fines or penalties within the meaning of those terms as used in the Constitution, because they are not levied or collected by a body that has the legal right to assess or affix fines or penalties against any person whatsoever for the violation of any criminal law. It has always been a good ground of demurrer to plaintiff's suit that the plaintiff has no legal right, title or interest in the thing sought; and it makes no difference under this rule what may be the nature of defendant's title. State ex rel. v. Seibert, 130 Mo. 222; Bliss on Code Pleading (3 Ed.), sec. 448; 4 Wait's Actions and Defenses, p. 358; Sanger v. Kennebec, 25 Me. 295; People v. Walker, 9 Mich. 328; Brownell v. Gratiot, 49 Mich. 414; Bank v. Runnells, 21 N. W. 211; State v. Benton, 31 Neb. 44; State v. Forrest, 8 Wash. 610; State v. Commissioners, 19 Wis. 237. Judicial power means that power with which courts are clothed for the purpose of the trial and determination of causes—the power to hear and determine the subject-matter between the parties to a suit, and render a judgment or decree. U. S. v. Arredondo, 6 Peters 709; Rhode Island v. Mass., 12 Peters 718; Riggs v. Johnson County, 6 Wall. 187. "Jurisdiction" means the power to hear, determine and decide. State ex rel. v. Withrow, 108 Mo. 8; Babb v. Bruere, 23 Mo. App. 606; Gray v. Bowles, 74 Mo. 424; Daniels v. Tearney, 102 U. S. 418; U. S. v. Arredondo, 6 Peters 709. All of the judicial power of the State is, by the Constitution, vested in courts—in the courts specified in that instrument. The General As-

sembly has no authority to either vest or apportion judicial power in any other tribunal than those specified in the Constitution. State ex rel. v. Ryan, 182 Mo. 349; State ex rel. v. Woodson, 161 Mo. 444; Jecker v. Montgomery, 13 How. (54 U. S.) 515. The grant by the Legislature of some power usually exercised by, or even essential to the existence of courts, does not make a court of the tribunal in whom·such power is vested. Cases cited immediately supra; State v. Hathaway, 115 Mo. ·37; U. S. v. Ferreira, 13 How. (54 U. S.) 39; U. S. v. Todd, 13 How. (54 U. S.) 51 (as a note by Chief Justice TANEY). ·Nor can the Legislature make a piece of a court and patch it out with the loan of judicial action borrowed from a real court. State ex rel. v. Ryan, 182 Mo. 349. A court is civil or criminal, or both, according to the character of causes it has authority, power or jurisdiction to hear and determine. The name by ·which it is designated· may add force to its character, but cannot control its powers or jurisdiction. State ex rel. v. Mason, 82 Mo. App. 242.

*Arthur N. Sager* and *Loomis C. Johnson* for respondent Nast.

(1) The court will not pass upon the constitutionality of an act in its entirety where the merits of the controversy can be decided without doing so. State ex inf. v. Detoney, 166 Mo. 529; State v. Railroad, 112 Mo. 34; State ex rel. v. King, 44 Mo. 283. Nor will it declare the act, in its entirety, unconstitutional simply because one section of the act may offend. State v. Williams, 77 Mo. 319; State v. Bockstruck, 136 Mo. 335; State ex rel. v. Warner, 197 Mo. 650. (2)  (a) The act in question, creating the St. Louis Court of General Sessions, does not come within the terms of article 4, section 3 of the Constitution of Missouri. State ex rel. v. Yancey, 123 Mo. 391; State v. Ebert, 40

Mo. 190; State ex rel. v. Wilcox, 45 Mo. 453; State ex rel. v. County Court of Boone County, 50 Mo. 352; State v. Johnson, 66 Mo. 202; State v. Etchman, 189 Mo. 648.   (b)   Article 4, section 31 of the Missouri Constitution gives the Legislature the power to establish criminal courts in counties having a population exceeding fifty thousand.   Ex parte Renfrow, 112 Mo. 591; State ex rel. v. Yancey, 123 Mo. 391; State v. Wiley, 109 Mo. 444; State v. Daniels, 66 Mo. 192; State ex rel. v. Boone Co. Court, 50 Mo. 317; State v. Etchman, 189 Mo. 648.   (c)   The Constitution having conferred a specific grant of power upon the Legislature, legislation in pursuance of such grant will not be held unconstitutional as special legislation.  State ex rel. v. County Court, 50 Mo. 324; State ex rel. v. Watson, 71 Mo. 370; Ewing v. Hoblitzelle, 85 Mo. 64; State ex rel. v. Yancey, 123 Mo. 401; State v. Etchman, 189 Mo. 648.   (d)   Section 1, article 6, inferentially authorizes the establishment of courts of inferior jurisdiction by the Legislature, but the qualifications of that section by the provisions of section 22 and section 31 leave no doubt of the right of the Legislature to create a court of the character of the St. Louis Court of General Sessions.   (3)   The St. Louis Court of General Sessions, although of inferior jurisdiction, by the Act of 1907 is vested with judicial functions and charged with the administration of the laws of the State.  It is therefore a court within the meaning of the Constitution and the law.   Mason v. Moerner, 18 Mo. 570; State ex rel. v. Woodson, 161 Mo. 453; 8 Am. & Eng. Ency. Law (2 Ed.), 22; Sternberg v. State, 48 Neb. 312; Hobart v. Hobart, 45 Iowa 503; Tissier v. Rhein, 130 Ill. 110; In re Allison, 13 Colo. 528; State v. Judges, 32 La. Ann. 1261; Shoultz v. McPheeters, 79 Ind. 376.   (4) The city of St. Louis, having become a beneficiary under section 17 of the act creating the Court of General Sessions, receiving and collecting from the clerk of the

circuit court the fees and forfeitures heretofore imposed and collected by the said St. Louis Court of General Sessions, is now estopped from pleading the unconstitutionality of the said act in a proceeding of this character.     Daniels v. Tearney, 102 U. S. 415; St. Louis v. Consolidated Coal Co., 113 Mo. 87.

GANTT, C, J.—This is an application in this court for a writ of mandamus against the clerk of the circuit court for criminal causes in the city of St. Louis and against the city itself to require the defendant Nast, as clerk of said court, to pay over to the Board of Education of the city of St. Louis all fines, penalties and forfeitures heretofore collected by him and which may hereafter be collected by him as clerk of the St. Louis Court of General Sessions.

The petition sets forth that the Board of Education is a public corporation organized and existing under the laws of the State of Missouri, and as such is in charge of the public schools and of the school fund of the city of St. Louis; that the defendant Nast is the duly elected, qualified and acting clerk of the circuit court for criminal causes in the city of St. Louis, and that the defendant city of St. Louis is the municipal corporation of that name in the State of Missouri.   It is then alleged that the Forty-fourth General Assembly of the State of Missouri, at its general session at Jefferson City in 1907, passed an act creating "The St. Louis Court of General Sessions," and that by section 5 of said act the clerk of the circuit court for criminal causes, in the city of St. Louis, is constituted *ex-officio* clerk of the said court of general sessions, and that pursuant to said provision defendant Adolph Nast is the qualified and acting clerk of said St. Louis Court of General Sessions.   That by virtue of section 10 of said act said court is given power to declare forfeitures, and by section 11 of said act said court is given

power to assess such punishment as may be fixed by
law whenever a defendant shall plead guilty to a misde-
meanor, and by section 17 of said act the clerk of said
court is directed to pay all fines, penalties and forfeit-
ures collected by him into the city treasury. That said
section 17 violates section 8, article 11 of the Constitu-
tion of the State of Missouri, which provides: ''All
. . . . the clear proceeds of all penalties and forfeit-
ures, and of all fines collected in the several counties for
any breach of penal or military laws of the State,
. . . . shall belong to and be securely invested and
sacredly preserved in the several counties as a county
public school fund; the income of which fund shall be
faithfully appropriated for establishing and maintain-
ing free public schools in the several counties of this
State.'' That on or about the second day of July, 1907,
one Peter Reiser pleaded guilty in the said court of
general sessions to a misdemeanor, and was fined by
said court in the sum of $100; that on or about the 31st
of August, 1907, one Michael Forster pleaded guilty in
the said court to a misdemeanor and was fined in the
sum of $10; that on or about the 25th of September,
1907, one Carrie Hegel pleaded guilty in said court to
a misdemeanor and was fined in the sum of $89; that on
or about the 4th of October, 1907, one John Jones
pleaded guilty in said court to a misdemeanor and was
fined in the sum of $50; and on the 15th of October,
1907, Charles Brooks pleaded guilty and was fined in
the sum of $25. That the defendant, Adolph Nast,
clerk as aforesaid, had collected all of the above fines,
amounting in the aggregate to the sum of $283, and has
audited said sum to the benefit of the defendant, the
city of St. Louis, and has refused and still refuses to
turn over the sum to the Board of Education of the
city of St. Louis, though often requested to do so. The
prayer of the petition is that a writ of mandamus be
awarded against the said defendant, requiring him to

pay over the amount of said fines and all fines which may hereafter be collected by him as the clerk of said court, to the Board of Education.

This court awarded the alternative writ of mandamus and the defendants waived the service of the same and entered their respective appearances in the cause and filed separate demurrers to the alternative writ. The circuit attorney appearing for the clerk, demurred on the general ground that the petition did not state facts sufficient to constitute a cause of action against the clerk. The city of St. Louis, by the city counselor and his assistant, in its demurrer, assigns the following special reasons why the writ should not be made peremptory:

"1st. Because the facts stated in said writ are not sufficient to entitle the relator, the Board of Education of the city of St. Louis, to any relief whatever, and because the same does not state facts sufficient to constitute a cause of action.

"2nd. Because the alleged fines are not fines within the meaning of section 8 of article 11 of the Constitution of the State of Missouri, the same not having been imposed or assessed by any court.

"3rd. Because, on the facts stated, the relator, the Board of Education of the city of St. Louis, has no interest whatever in the sums of money alleged by it to be fines, for the reason that said pretended fines were assessed by the St. Louis Court of General Sessions, which is not and cannot be a court under the laws of this State.

"4th. Because the Act of the Legislature of April 15, 1907, creating the St. Louis Court of General Sessions, is unconstitutional and void, in that it violates section 1 of article 6 of the Constitution of the State of Missouri, in that by said section the entire judicial power of the State is vested in the courts there named, together with the justices of the peace courts created

by section 37 of article 6 of the Constitution, and the St. Louis Court of General Sessions having no power to try and determine criminal or other cases is not a criminal court, and cannot assess or impose fines for the violation of the laws of the State of Missouri.

"5th. The said Act of the Legislature of April 15, 1907, is unconstitutional and void, in that it violates section 53 of article 6 of the Constitution of the State of Missouri, and particularly those provisions of said section which prohibit. the Legislature from passing any local or special law creating offices, and prescribing the powers and duties of officers in counties, cities, townships, election or school districts; or any local or special law regulating the practice or jurisdiction of courts, justices of the peace, or other tribunals; or any local or special law in any other case where a general law can be made applicable, and providing that whether a general law could be made applicable in any case is a judicial question which shall be judicially determined without regard to any legislative assertion on the subject.

"6th. The said Act of the Legislature of April 15, 1907, is unconstitutional and void, in that it violates section 54 of article 4 of the Constitution of the State of Missouri, which provides that no local or special law shall be passed, unless notice of the intention to apply .therefor shall have been published in the locality where the matter or thing to be affected may be situated, and no notice whatever was published of said act.

"7th. Because the provision of said Act of April 15, 1907, requiring the fines to be paid to the city of St. Louis, is an essential part of the same without which the Legislature would not have enacted the same, nor created said St. Louis Court of General Sessions, and said provision cannot be held void by reason

of section 8 of article 11 of the Constitution without destroying the entire act.''

The circuit attorney practically concedes that section 17 of the Act of 1907 (Laws 1907, pp. 212 and 217), is unconstitutional in that it attempted to divert from the school fund of the city of St. Louis the net proceeds of the fines and forfeitures which by section 8 of article 11 of the Constitution of this State are required to be turned over to the school fund, but urges that in other respects the act is constitutional.

The issue is clear and single. The School Board of St. Louis invokes the mandatory writ of this court to compel the clerk of the circuit court for criminal causes in the city of St. Louis, to turn over to it the fines imposed for misdemeanors by the St. Louis Court of General Sessions now in his hands, and to command and require him to pay over to the Board of Education all fines, penalties and forfeitures which may hereafter be collected by him as clerk of the said St. Louis Court of General Sessions. We are relieved in this case of all question as to the character of the fund, which the relator seeks to recover. It is a fund which has accumulated out of fines imposed by the St. Louis Court of General Sessions for crimes, and if we should make the writ peremptory, it would be a command to the clerk of the circuit court for criminal causes in the city of St. Louis to pay over to the relator, the school board of the city of St. Louis, the clear proceeds of all of the said fines collected by him and now in his hands as clerk, and all such fines and forfeitures as shall hereafter be assessed and imposed by said St. Louis Court of General Sessions, and to do this, in view of the issues presented by this proceeding, we must determine and adjudge that the St. Louis Court of General Sessions is a lawful and constitutional court, duly authorized and adjudged to impose said fines and forfeitures, and has the power to adjudge a person guilty of

a misdemeanor or other crime. To impose a fine as punishment therefor *ex vi termini* assumes that there is a court legally constituted with power to impose and enforce the same. If the St. Louis Court of General Sessions is a constitutional and lawfully constituted court no doubt whatever can exist that the Board of Education of the city of St. Louis is entitled to the fines and penalties set forth in its application for the writ of mandamus in this case, and that section 17 of the Act of April 15, 1907 (Laws 1907, p. 212), is unconstitutional, and therefore void, inasmuch as it is a clear violation of the constitutional mandate. [Sec. 8, art. 11, Constitution of Missouri; State ex rel. Rodes v. Warner, 197 Mo. 650; In re Staed, 116 Mo. 537; State v. Clifford, 124 Mo. 492.] But if it shall appear, as is asserted by the demurrers in this case, that there is no such court, or what amounts to the same, that said St. Louis Court of General Sessions is not a constitutional and lawfully created court, then it had no right to impose, assess or enforce said fines, and relator had no right to demand and receive the same, as it has always been held a good ground of demurrer that the plaintiff has no legal right, title or interest in the thing demanded, and in such case it makes no difference what may be the nature of the defendant's title. The large and controlling question in this case then is, is the St. Louis Court of General Sessions a lawfully constituted and constitutional court with power and authority to hear and determine informations for misdemeanors and to adjudge the defendants therein guilty and to assess and impose fines therefor and enforce the same?

By section 1 of article 6 of the Constitution of Missouri, it is ordained: "The judicial power of the State, as to matters of law and equity, except as in this Constitution otherwise provided, shall be vested in a Supreme Court, the St. Louis Court of Appeals, circuit courts, criminal courts, probate courts, county courts

and municipal corporation courts." By section 31 of
article 6 of the Constitution of Missouri, it is provided:
"The General Assembly shall have no power to estab-
lish criminal courts, except in counties having a popu-
lation exceeding fifty thousand," and section 37 of the
same article provides: "In each county there shall be
appointed, or elected, as many justices of the peace as
the public good may require, whose powers, duties and
duration in office shall be regulated by law." Section
22 of article 6 provides: "The circuit court shall have
jurisdiction over all criminal cases not otherwise pro-
vided for by law; exclusive original jurisdiction in all
civil cases not otherwise provided for, and such con-
current jurisdiction with and appellate jurisdiction
from inferior tribunals and justices of the peace as is
or may be provided by law." Section 28 of article
6 provides: "The General Assembly may, from
time to time, provided one or more additional
justices for any circuit composed of a single
county." In 1884 the Constitution was amended by
creating the Kansas City Court of Appeals and pro-
viding for the territorial jurisdiction of the St. Louis
Court of Appeals and the Kansas City Court of Ap-
peals, and also providing that the Legislature should
have power to create an additional court of appeals.
The Constitution of 1875 also provided "that all crimi-
nal courts organized and existing under the laws of
this State, and not specially provided for in this Con-
stitution, shall continue to exist until otherwise pro-
vided for by law." Thus it will be seen that all the
judicial power of this State is by the Constitution it-
self vested in courts specified and provided for in that
instrument. The General Assembly may lawfully ap-
portion among the courts mentioned in the Constitution
the judicial power vested in them by the Constitution
itself, subject always to the limitations and prohibi-

tions imposed by the Constitution upon the Legislature.

In State ex rel. Haughey v. Ryan, Judge, 182 Mo. l. c. 355, it was said by this court In Banc: ''All the judicial power in this State is by our Constitution vested in certain courts therein named [Art. 6, sec. 1, Mo. Const.]. The General Assembly has no authority to create any other tribunal and invest it with judicial power. It may and it has created boards with quasi-judicial functions, but those functions are not really judicial; they partake more of the character of ministerial offices.'' In State ex rel. v. Woodson, 161 Mo. l. c. 453, it was again said: ''By our Constitution the judicial power of the State, as to matters of law and equity, except as in the Constitution itself otherwise provided, is vested in certain courts therein named. [Sec. 1, art. 6, Const.]. The word 'court' is there used in its technical sense. A court is a judicial assembly. The judge of the court is its presiding officer. While the judge is often called the 'court', yet he is only so rightly called when the tribunal over which he presides is in session. Bouvier gives to the word 'court' this definition: 'A body in the government to which the public administration of justice is delegated. The presence of a sufficient number of the members of such a body, regularly convened in an authorized place at an appointed time, engaged in the full and regular performance of its functions.' The Supreme Court of California has said: 'A court is a tribunal presided over by one or more judges, for the exercise of such judicial power as has been conferred upon it by law. Blackstone, following Coke, defines it as ''a place where justice is judicially administered.'' '' In State v. Hathaway, 115 Mo. l. c. 49, it was said: ''A judicial duty within the meaning of the Constitution is such a

duty as legitimately pertains to an officer in the department designated by the Constitution as judicial."

The Constitution of this State in article 6 has conferred jurisdiction over both criminal and civil cases and has expressly provided for the distribution of this jurisdiction. In Ex parte Snyder, 64 Mo. 58, the Act of March, 1875, establishing a probate and criminal court in lieu of the common pleas court of Cass county, which by its terms was not to take effect until January, 1876, was held unconstitutional, because it was not in force and existing at the time the Constitution went into effect on November 30, 1875. And a prisoner who was convicted in said court of grand larceny was discharged on *habeas corpus* on the ground that said court was absolutely without jurisdiction to try and convict him. Owing to the distribution of the jurisdiction into civil and criminal cases, the courts having jurisdiction of criminal cases were designated as criminal courts and those having jurisdiction of civil cases became known as civil courts. There can be no valid prosecution for crime unless the court in which it is carried on is legally created and constituted and has jurisdiction of the offense and of the person of the defendant. Jurisdiction to punish the offense cannot be conferred by the consent of the accused. Clark, in his work on Criminal Procedure, page 4, says: "No court can try and punish for any offense unless it is a legal court; that is, unless it is legally created and legally constituted. If the statute attempting to create a court is clearly unconstitutional, or otherwise clearly insufficient, there is no legal court, and, if a court purporting to have been so created assumes jurisdiction of an offense, its proceedings and judgments are an absolute nullity. . . . . If the court or judge is neither a *de jure* nor a *de facto* court or judge, the judgments are a nullity, and may be attacked at any time." And this court, in Ex parte Snyder, supra, said: "Numer-

ous cases can be instanced from the books, where the acts of an incumbent of an office have been held valid, upon the ground that such incumbent was an officer *de facto*. But an officer of that description necessarily presupposes an office which the law recognizes. And a quite extensive research has failed to discover an instance where an incumbent has been held an officer *de facto*, unless there was a legal office to fill; and all the cases cited from our own reports were of that sort. And as there was no such office or court known to the law as the probate and criminal court of Cass county, the conviction of the petitioner was altogether *coram non judice.*" In State ex rel. v. Mason, 82 Mo. App. l. c. 242, it was well said: "A court is civil or criminal, or both, according to the character of causes it has authority or jurisdiction to hear and determine. The name by which it is designated may add force to its character, but cannot control its powers or jurisdiction."

The foregoing considerations lead us now to an examination of the Act of April 15, 1907, and to determine, if we can, the nature of the jurisdiction which was conferred upon it and whether that jurisdiction is civil or criminal. On the part of the circuit attorney, it is said, that the said court was created to supply a defect in the criminal system as applied in the city of St. Louis; that the old system worked an inconvenience and delay, to have charges of felony made by the prosecuting attorney of the city and heard in the St. Louis court of criminal correction and then to require prosecutions for felony to be prosecuted by the circuit attorney in the circuit court. Section 1 of the act under consideration provides in terms, "That said court shall be a court of record, *with criminal jurisdiction, as hereafter provided.*" No civil jurisdiction of any character whatever is conferred or attempted to be conferred upon it. The sections of the act which

purport to confer jurisdiction upon this court as a criminal court are as follows:

Section 4. "Said court of general sessions shall have exclusive jurisdiction in the city of St. Louis of the hearing and determination of all preliminary examinations of charges of felony, and in misdemeanors, as hereinafter provided, and the judge of said court shall possess all the power of an examining magistrate in felony cases as exercised by justices of the peace generally under the laws of this State. Said judge shall be a conservator of the peace within the city of St. Louis; he shall have power to issue writs of *habeas corpus* in matters of a criminal nature, and determine the same, to administer oaths and affirmations, and to take and acknowledge recognizances in all cases within the jurisdiction of said court. He shall receive an annual salary of four thousand dollars, to be paid in monthly installments by the city of St. Louis."

Section 10. "Said court shall have power to take recognizances in all cases within its jurisdiction and to declare forfeiture of the same. When judgment of forfeiture has been entered on any such recognizance, the clerk must certify and return to the circuit court division having criminal jurisdiction in said city the recognizance and a transcript of his record in relation thereto, to be proceeded on in said circuit court as other forfeited recognizances in criminal cases in said circuit court."

Section 11. "Whenever, in the course of any proceeding in said court upon an information for felony, it shall appear that the defendant has been guilty, in the particular matter, of a misdemeanor only, the court shall discharge the defendant from the felony charge and may admit him to bail to answer an information for the misdemeanor to be filed by the prosecuting attorney in the court of criminal correction, or, in default of bail, commit the defendant to jail to await such

action by said prosecuting attorney; but no such commitment shall be for a longer period than forty-eight hours; and if no such information be filed in said court of criminal correction within such period, the defendant shall be discharged. But if the defendant in such case desire to plead guilty to such misdemeanor and to receive sentence therefor, waiving his right to a jury and to an information for the misdemeanor, the court may accept such plea of guilty and assess such punishment as may be fixed by law for the offense, and issue a commitment or execution therefor, with the same force and effect as if such defendant had been tried for such misdemeanor in the court of criminal correction, and the record shall show the whole proceedings.''

A critical examination of each of the foregoing sections will demonstrate that the said court had no power to hear, determine and decide the guilt or innocence of an accused either for felony or a misdemeanor, save and except by section 11.

In the absence of such plea of guilt, it is perfectly obvious that no judicial power had been apportioned by the Legislature to said court for the trial of misdemeanors, because the preceding portion of said section 11 provides merely for a preliminary examination, and if it appears that the defendant has been guilty of a misdemeanor only, the court is required to bail him or commit him to await the action of the prosecuting attorney in the St. Louis Court of Criminal Correction, which has jurisdiction to hear and determine misdemeanors. The General Assembly has power to provide a criminal court in counties having a population of fifty thousand, and could doubtless create another criminal court in the city of St. Louis, if the public weal required it, in addition to all the other courts of said city now having jurisdiction of criminal causes, but this act gives no such jurisdiction, unless it can be said that the single power to sentence a prisoner for a

misdemeanor upon his plea of guilty can be denominated jurisdiction over criminal causes. It is certainly an anomalous situation to denominate a body a court and to accord to it criminal jurisdiction when such so-called court has absolutely no power to hear or determine or render any judgment save by and with the consent of the accused. Heretofore, we have understood that a judgment must be pronounced by a court, a body clothed with authority of law, a body having the power to hear, determine and decide, since without this power the requiring of jurisdiction over the subject-matter and over the person would be an idle ceremony and a mockery. The prerequisite of jurisdiction over both comes down to us from the common law of England and is embedded in our judicial system. A judgment of a court with us is the final determination of a competent court upon the law and facts of a given case, whether in a controversy between adverse parties or in an *ex parte* proceeding, and the rule has become canonized that a party or parties can not confer jurisdiction over the subject-matter of a cause by consent. The law must confer the jurisdiction, the right to hear, determine and decide; a decision by an arbiter self-constituted or chosen by the litigants is no judgment. The law speaks by its own appointed and duly empowered organs, and their judgments must be responsive to the law and state of facts brought before them in the manner prescribed by law. The power to so act is what we term jurisdiction. Power to hear is the power to hear both sides and hear all the issues affecting the matter. By this it is not meant of course that parties may not waive their right to make issues, for instance, by making default, but such waiver, default or admission does not and can not confer jurisdiction over the subject-matter which the court would not have were the facts proven instead of admitted. The court as a matter of law either has or has not jurisdic-

tion on a given state of facts, irrespective of whether one or both of the parties admit or deny them. It must needs follow that a tribunal with jurisdiction, only if a defendant or an accused consents, is not under our system and government a court.

The mere fact that the Legislature may call it a court does not make it a court within the meaning of our Constitution when it uses that term. While the first section of the Act of 1907 declares that the St. Louis Court of General Sessions is "a court" and "a court of record" it qualifies those terms by the phrase, "as hereinafter provided," obviously referring to the jurisdiction or powers, in the act afterwards conferred, and nowhere in the act is any jurisdiction apportioned to said court in criminal causes. The conferring of the general attributes of a court of record is not an apportionment of any part of the judicial power of the State over a given class of causes. Those attributes presuppose a lawfully constituted court with a lawfully defined jurisdiction. It follows that while the power to assess punishment for a crime is judicial power, it can only be exercised by a court, and the sole power to enter a judgment upon a plea of guilty, dissociated from all other essential and indivisible elements of judicial action, must be held to be abortive and of no efficacy.

Moreover, the provision for accepting a voluntary plea of guilty, "without an information for the misdemeanor," is directly in the teeth of section 12 of article 2 of the Constitution of this State, which ordains that, "No person shall be prosecuted criminally for a felony or misdemeanor otherwise than by indictment or information, which shall be concurrent remedies." Under this act we have the spectacle of a court of record rendering a judgment of conviction with no information or other foundation of record upon which to bottom that judgment and furnishing no basis to the

accused for a plea of *autrefois acquit* or *convict* should he be again called into court for the same offense. We have in a word a plea of guilty to a charge, no information for which could by any possibility have been filed in said court. The result is that we have, notwithstanding all our constitutional guarantees, the punishment of a citizen by fine or imprisonment in jail without any criminal prosecution therefor, because in the absence of an information for some specific misdemeanor there is absolutely nothing of which the said court could take jurisdiction under our Constitution and laws.

If such a tribunal can be called a court, it is a court which can not act except in plain violation and disregard of all safeguards of our Constitution.

Many other reasons occur to us why said court of general sessions is devoid of all those powers and the jurisdiction essential to entitle it to be recognized as a court within the meaning of our Constitution and laws, for the punishment of misdemeanors, but we forbear and proceed now to consider some of the other contentions advanced to show that it is a court. Thus we are referred to the exclusive jurisdiction in the hearing of preliminary examinations on charges of felony and misdemeanors, and it is asserted that this is the exercise of *judicial power* and the body upon whom it is conferred is a court. This is not a new question in this country. In Ex parte Gist, 26 Ala. 156, the application was for *habeas corpus* and *certiorari* to discharge the prisoner who had been committed and detained under a warrant of commitment for robbing the United States mail, issued by a justice of the peace of that State, in conformity to the thirty-third section of the Act of Congress, of September 24, 1789, 1 Stat. at Large, page 91, sec. 33. Said the Supreme Court of Alabama: "It is not denied that Congress may constitutionally pass the law for the violation of which the

prisoner stands committed; but it is insisted for the petitioner that the thirty-third section of the Judiciary Act confers *judicial power* upon a *state officer,* in violation of section 1, article 3, and the second clause of section 2, article 2, of the Federal Constitution. We concede that the power or authority conferred by this act is in its nature judicial. The justice of the peace is called upon to exercise judgment and discretion; he is to judge of the sufficiency of the affidavit on which the warrant of arrest is founded; he must determine, upon the evidence adduced against the prisoner, whether there is reasonable ground of suspicion against him, so as to require that he should be put upon trial for the offense; and he is to imprison or take bail for the appearance of the party at court to abide his trial. But, although such authority involves in its exercise judicial functions, we are very clear it does not fall within the meaning of '*judicial power,*' in the sense in which that term is used in the third article of the Constitution. . . . . It is manifest, we think, that by the term 'judicial power' is here meant that power with which the *courts* are to be clothed for the purpose of the *trial* and determining of causes,'' citing Prigg v. Com. of Pennsylvania, 16 Peters 539; Moore v. People, 14 How. (U. S.) 13; United States v. Ferreira, 13 How. 48; In re Kaine, 14 How. (U. S.) 103.

In Ex parte Pool, 2 Va. Cases 276, it was held that ''a commitment is not such an act of judicial power as requires that it should be exercised by courts or judges within the meaning of the third article of the Constitution; by judicial power is there meant such regular and permanent duties as belong to courts and judges in the ordinary and popular signification of the words. A justice of the peace, or any other person designated by the Act of Congress, may be authorized to commit, although they can not be required or compelled to do so.'' Bishop, in his New Crim. Proc. (4 Ed.), volume 1,

section 237, says: "The magistrate, in exercising this jurisdiction, appears to act, not judicially, but ministerially; at least, he does not put forth 'judicial power,' within the meaning of the Constitution of the United States," citing the foregoing cases. The first section of the third article of the Constitution of the United States provides: "The judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish." The first section of article 6 of our Constitution provides: "The judicial power of the State, as to matters of law and equity, except as in this Constitution otherwise provided, shall be vested in a Supreme Court," etc. The language and import of the two instruments are to the same purpose, a grant and distribution of the judicial power, the one, in the United States; the other, in the State. If the provision for arrest and preliminary examination in the one does not confer "judicial power" within the meaning of the Federal Constitution neither is it an apportionment of the "judicial power" in the other. In Ex parte Bedard, 106 Mo. 616, the Act of 1869, creating the St. Louis Court of Criminal Correction, came before Division No. 2 of this court for construction as to the right of an accused to a change of venue from the said court in a preliminary examination and it was held that in preliminary examinations for a felony the judge of the said court did not act as a *court,* but as an examining magistrate, but that in the disposition of misdemeanors it was a court, and the same conclusion was reached by the St. Louis Court of Appeals in State v. Hoeffner, 44 Mo. App. 543. [Laws 1869, p. 198, sec. 21.] Our statutes, Revised Statutes 1899, section 2441, vests this power in justices of the peace as distinct from their powers as inferior courts, and not as a grant or apportionment of the "judicial power" of the State. Bishop, in his Crim. Proc., sec. 239,

defines a preliminary examination as "a mere expedient to prevent the suspected person from escaping or for preserving the evidence, or keeping the witnesses under control." Certainly the conclusion of the committing magistrate in no sense partakes of a judgment, for whether held over or discharged it is no bar to a further prosecution by the State. [State v. Whalen, 148 Mo. l. c. 290.] As said by the Supreme Court of Alabama, the fact that some of the duties devolving upon the examining magistrate partake of a judicial character does not bring them within the grant of the judicial power of the State and constitute the said court or the judge thereof one of the courts in which the judicial power is vested by the Constitution.

But it is said the judge of said court shall be a conservator of the peace, but it will not be seriously contended that this constitutes him a court, any more than it would make a sheriff or constable who from time out of mind were known as conservators of the peace in England before the office of justices of the peace was created. [Lambard, book 1, ch. 4; In re Barker, 56 Vt. 14.]

Again, it is to be noted that the judge of said court "shall have power to issue writs of *habeas corpus* in matters of a criminal nature and determine the same." It is obvious that no such power is granted to the tribunal itself and hence no part of the judicial power of the State is apportioned to said tribunal in this regard and the power conferred upon the judge to issue such writs would not make his court a criminal court. The proceeding by *habeas corpus* is civil and not criminal. [Ex parte Tom Tong, 108 U. S. 556.] Of course, it need only be said that the giving of the judge power to administer oaths and affirmations and to take and acknowledge recognizances does not constitute the said judge a court. The power to take recognizances in all cases within its jurisdiction is rendered futile by the

fact that no criminal cause can come before it as a court.

It must therefore be held that neither one nor all of the alleged powers conferred by the act upon this so-called court, in law, constitute it a court within the meaning of our Constitution. It could not possibly be anything but a criminal court and yet no jurisdiction over criminal causes, either felonies or misdemeanors, is apportioned to it, and the attempt to confer the other powers enumerated in the act does not constitute it a criminal court.

But it is said by the circuit attorney that notwithstanding section 17 of the act is void because unconstitutional, the remainder of the act can stand. Numerous cases attest that though one section of an act is unconstitutional that alone will not authorize the courts to declare the remainder of the statute void unless all of its provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected in meaning that it can not be presumed the Legislature would have passed one without the other. [State v. Williams, 77 Mo. l. c. 313; State v. Bockstruck, 136 Mo. 335; State ex rel. v. Warner, 197 Mo. 650.]

If the invalid and unconstitutional section was, so to speak, the consideration for the whole act or so interwoven into it that we can readily presume the Legislature would not have enacted it but for the unconstitutional section, then the whole act must fail. The sole purpose of this Act of April 15, 1907, was to create a special tribunal in the city of St. Louis. The act created no new offense and prescribed no punishment. Other long established courts already possessed jurisdiction and authority over every matter attempting to be given to this court and that jurisdiction was well understood by the bar and public. To this system, this anomalous tribunal was added at the

expense of the city, and the Legislature evidently thought that as the city was to bear this additional and apparently wholly unnecessary burden, it should be in part compensated with the voluntary fines which should be paid into the registry of the clerk, and while that provision would clearly have been unconstitutional, had a lawful and constitutional court been established, we do not believe it would have been passed but for the provision reimbursing the city to the extent of those fines.

This opinion has been extended to a greater length than we desire because we are unwilling to declare and adjudge an act of the Legislature unconstitutional without a full consideration of its provisions and without being convinced beyond a doubt of its unconstitutionality. In our opinion the said Act of April 15, 1907, attempting to create the said St. Louis Court of General Sessions, is entirely unconstitutional and void and the demurrers are sustained, and the alternative writ quashed.

All concur.